2003 ME 19

**STATE of Maine**

v.

**Miguel Santiago REYNOSO–HERNANDEZ.**

**No. Oxf–02–172.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2002.
Decided: Feb. 20, 2003.

---

**828**

G. Steven Rowe, Attorney General, James M. Cameron, Asst. Attorney General (orally), David N. Fisher, Asst. Attorney General, Augusta, for State.

Sarah L. Glynn, Esq. (orally), David Q. Whittier, P.A., South Paris, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Miguel Santiago Reynoso–Hernandez appeals from a judgment of the Superior Court (Oxford County, *Warren, J.*), entered upon a jury verdict finding him guilty of unlawful trafficking in scheduled drugs, 17–A M.R.S.A. § 1103(1), (2)(A) (1983 & Supp.2002), marijuana cultivation, 17–A M.R.S.A. § 1117(1), (2)(D) (Supp. 2002), and two counts of violating conditions of release, 15 M.R.S.A. § 1092 (Supp. 2002). He was acquitted of unsworn falsification, 17–A M.R.S.A. § 453(1)(C) (1983). Reynoso contends that the Superior Court (*Gorman, J.*) improperly denied his motion to suppress evidence based on an illegally executed warrant.[1] We affirm the judgment.

## I. BACKGROUND

[¶ 2] Based on a confidential informant's controlled buy of cocaine from Miguel Santiago Reynoso–Hernandez at Reynoso's home, the Maine Drug Enforcement Agency secured a warrant to search Reynoso's home. The warrant was executed at 8:45 P.M. Between three and five law enforcement vehicles with their lights on pulled into Reynoso's driveway. The lead drug enforcement agent parked his car so that the headlights were directly shining on the primary entrance to the home, a locked door that entered into the garage. That door was the same door that the confidential informant, an acquaintance of Reynoso, had entered during the controlled buy.

[¶ 3] Upon approaching the door, Agent Tony Milligan yelled that the "drug enforcement" or "police" were at the door. He also announced, "search warrant" and

---

1. Reynoso also challenges a discovery ruling of the court. We find no error in that ruling and do not discuss it further.

"open the door." Upon waiting five to ten seconds and receiving no response, Agent Milligan instructed another officer to forcibly enter the garage.

[¶ 4] The officers entered the garage and encountered another locked door into the main residence. An officer banged and kicked on the inside door and announced "Open the door. Police. Search warrant. Open the door." From behind the door, Reynoso kept repeating, "Wait a minute. Just a minute. Just a minute." After waiting another ten seconds at the second door, Agent Milligan instructed an officer to forcibly enter the home. Upon entry, they found Reynoso within fifteen feet of the second door. During the search of Reynoso's home, the officers found cocaine, a marijuana plant, and various drug paraphernalia.

[¶ 5] Reynoso filed a motion to suppress alleging, *inter alia*, that the warrant's execution did not comply with "knock and announce" standards. After hearing testimony from Agent Milligan at the suppression hearing, the motion court held that the officers had followed proper "knock and announce" standards by clearly announcing their presence and then waiting a sufficient time period before entering the residence. The case proceeded to trial and the jury returned a guilty verdict on four of the five charges. This appeal followed.

## II. DISCUSSION

A. Burden of Proof and Standard of Review

[¶ 6] We must determine whether the Superior Court erred when it conclud-ed that the officers' execution of the search warrant complied with the "knock and announce" principles of the Fourth Amendment.[2] As in this case, when a defendant moves to suppress evidence alleging that the State has exceeded its authority pursuant to the Fourth Amendment, the burden of articulating facts sufficient to demonstrate the possible illegality of the search or seizure rests with the defendant. *State v. Desjardins*, 401 A.2d 165, 169 (Me.1979) ("[T]he suppression movant must articulate in his motion with sufficient particularity the specific reason on which he bases his claim that the seizure without warrant was illegal . . . .").

[¶ 7] Once a defendant satisfies the burden of going forward, the responsibility for the burden of persuasion depends upon the specific nature of the challenge to the search or seizure. *See, e.g., Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (holding that the burden is on the defendant when the validity of the warrant is challenged); *State v. Rand*, 430 A.2d 808, 817 (Me.1981) (holding that the burden is on the State to establish exception justifying warrantless search).

[¶ 8] Because the burden of persuasion, that is, the burden of proof, depends on the nature of the defendant's challenge, it is incumbent on the defendant to identify with specificity the exact document or conduct challenged in any motion to suppress. Absent that specificity, the motion court will be hampered in its ability to assign a burden of proof and apply the law accordingly.

2. In *State v. Hider (Hider I)*, we ruled that Article I, Section 5 of the Maine Constitution did not contain a "knock and announce" protection. 649 A.2d 14, 15 (Me.1994). We have not announced any change in this holding since the United States Supreme Court's decision in *Wilson v. Arkansas*, 514 U.S. 927, 929, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), explicitly incorporating those concepts in the Fourth Amendment of the U.S. Constitution. We need not revisit that question today, as we decide this case under the federal constitutional right.

[¶ 9] Reynoso's motion presented factual details regarding the execution of the search and explicitly challenged the "knock and announce" procedure used by law enforcement. When a defendant challenges the execution of an otherwise valid warrant pursuant to the "knock and announce" principles of the Fourth Amendment, the burden is on the State to show the reasonableness of the execution of the warrant.[3] *See United States v. Holmes,* 175 F.Supp.2d 62, 73–76 (D.Me.2001), aff'd after reconsideration, 183 F.Supp.2d 108 (D.Me.2002).

[¶ 10] We turn then to the appropriate standard of review. In Fourth Amendment appeals, the proper standard of appellate review depends upon the challenges raised by the appellant. This variation in standards results from the motion court's obligation to resolve constitutional issues in two steps. First, the motion court must find the facts of the event at issue, referred to as the "historical facts." *State v. Cefalo,* 396 A.2d 233, 239 (Me. 1979) (citing *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (1953)) (" 'historical facts' [are] facts 'in the sense of a recital of external events and the credibility of their narrators.' "). Second, from these facts, the motion court must draw legal conclusions. *Cefalo,* 396 A.2d at 239. Because the motion court has had the opportunity to hear the witnesses and assess their credibility, we afford the motion court's findings concerning historical facts considerable deference. *Id.* Thus, we review the factual findings of the motion court to determine whether those findings are supported by the record and only if the findings are clearly erroneous will they be set aside. *See State v. Anderson,* 1999 ME 18, ¶ 6, 724 A.2d 1231, 1233.

[¶ 11] In contrast, a challenge to the application of those facts to constitutional protections is a matter of law that we review de novo. *State v. Ullring,* 1999 ME 183, ¶ 8, 741 A.2d 1065, 1067. In those instances, we are in the same position as the motion court to determine whether an application of the facts to the applicable law warrants a particular legal conclusion. *Cefalo,* 396 A.2d at 239. Moreover, we "[have] a special responsibility to exercise [our] independent judgment to determine the validity of legal conclusions that are dispositive of a defendant's claim that he has been denied fair treatment in a criminal proceeding." *Id.*

[¶ 12] Accordingly, a motion court's findings of historical facts on relevant issues will be overturned only when clearly erroneous; however, the legal conclusions drawn from those facts are subject to our independent examination. *Id.* at 240; *see also Ornelas v. United States,* 517 U.S. 690, 697–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (reviewing Fourth Amendment questions de novo while employing the deferential clear error standard to review findings of fact). In this case, the facts are not significantly disputed, and where there is dispute, the court's findings are not clearly erroneous. Thus, we address the court's application of those facts to the law. *State v. Dube,* 655 A.2d 338, 340 (Me.1995); *State v. Cloutier,* 544 A.2d 1277, 1280 (Me.1988).

B. Application of Law

[¶ 13] Although it has been less than ten years since the United States Supreme Court specifically announced the incorporation of "knock and announce" concepts in Fourth Amendment analyses,

---

**3.** Previously, we broadly announced that the defendant "had the burden of proof on his challenge to the execution of the search warrant." *State v. Torrey,* 1998 ME 5, ¶ 4, 704 A.2d 397, 398. That announcement occurred in the context of analyzing a *Franks* challenge and is limited to that specific challenge. *Id.* ¶¶ 2–4.

the concept of a "knock and announce" policy first appeared in English common law as early as the thirteenth century. *Wilson v. Arkansas,* 514 U.S. 927, 932 n. 2, 115 S.Ct. 1914, 131 L.Ed.2d 976 ("This 'knock and announce' principle appears to predate even *Semayne's Case,* which ... indicates that the doctrine may be traced to a statute enacted in 1275, and that at that time the statute was 'but an affirmance of the common law.' ") (citations omitted). This principle continued to be a rule of law through the founding of the United States and was accepted in many states, applicable to state officers' conduct, through the states' adoption of early common law into their own constitutions and statutes. *Id.* at 933–34.

[¶ 14] In 1948, Congress enacted a statutory requirement that officers executing a search warrant must "knock and announce" their presence. 18 U.S.C.A. § 3109 (2000). As the United States Supreme Court has indicated, this statutory protection was based on the same common law "knock and announce" principle. *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Throughout the years between the enactment of section 3109 and the recognition of the constitutional "knock and announce" principle, the federal "knock and announce" statute bound only federal law enforcement officers. *United States v. Gatewood,* 60 F.3d 248, 249 (6th Cir.1995).

[¶ 15] In 1995, the United States Supreme Court explicitly incorporated the common law "knock and announce" standards into the Fourth Amendment in *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914. This newly articulated constitutional concept "includes a general presumption that police officers executing a search warrant ... must announce their presence and authority before entering [a person's home]." *United States v. Moore,* 91 F.3d 96, 98 (10th Cir.1996) (citing *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914).

[¶ 16] Many courts, including the United States Supreme Court, have found cases interpreting 18 U.S.C.A. § 3109 are helpful when interpreting the constitutional right. *See Wilson,* 514 U.S. at 934 n. 3, 115 S.Ct. 1914; *see also Miller,* 357 U.S. at 313, 78 S.Ct. 1190 ("Congress, codifying a tradition embedded in Anglo–American law, has declared in [section] 3109 the reverence of the law for the individual's right of privacy in his house."); *Moore,* 91 F.3d at 98; *United States v. Ruminer,* 786 F.2d 381, 383 (10th Cir.1986); *United States v. Sargent,* 150 F.Supp.2d 157, 160 n. 2 (D.Me.2001) *reversed on separate grounds, United States v. Sargent,* 319 F.3d 4 (1st Cir.2003). Therefore, although we take our guidance from the United States Supreme Court's interpretation of the Fourth Amendment, we recognize that in this unique setting, interpretations of this particular constitutional concept are colored by federal statutory interpretation. Accordingly, applying case law interpreting both constitutional *and* statutory rights, which are both based in the common law right, we determine whether the officers complied with "knock and announce" principles under the federal constitution.

[¶ 17] In his motion to suppress, Reynoso argued that the manner of entry into his premises was unreasonable and violated his Fourth Amendment rights against unreasonable searches and seizures. In particular, he alleged that the officers failed to announce that they were there to execute a warrant and that they did not wait for a reply to their knocks before forcibly entering his residence. Based upon these allegations, Reynoso met his initial burden of making a showing that his Fourth Amendment rights were violated by the officers' alleged failure to properly

announce their purpose and to wait a reasonable length of time before entering under color of warrant. Thus, at the suppression hearing, the State had the burden to show that the officers' actions were reasonable. *See Holmes*, 175 F.Supp.2d at 73–76; *cf. Richards v. Wisconsin*, 520 U.S. 385, 394–395, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (holding that when no-knock entry is challenged, police must prove they had a reasonable suspicion that knocking and announcing presence would be dangerous or futile or inhibit effective investigation of crime); *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir.1998) (finding that when law enforcement agents claim exigent circumstances relieved them of the obligation to knock and announce, the State has the burden to show "reasonable suspicion" based on the particular circumstances of the case).

[¶ 18] There is no set method for conducting a search consistent with "knock and announce" principles; rather, reasonableness of the execution should be judged by the totality of the circumstances facing the officers at the moment of execution. *See Wilson*, 514 U.S. at 934, 115 S.Ct. 1914 ("The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement . . . ."); *cf. State v. Hider (Hider II)*, 1998 ME 203, ¶ 10 n. 9, 715 A.2d 942, 946 (citing *State v. George*, 1997 ME 2, ¶ 9, 687 A.2d 958, 960) (using the standard of reasonableness in the totality of the circumstances). When evaluating the amount of time an officer waited before forcibly entering a home, courts do not look at specific time periods but whether the amount of time was reasonable under the circumstances. *See Sargent*, 150 F.Supp.2d at 160. Whether the amount of time was reasonable should be evaluated, not in relation to how long it takes to open the door, but in relation to how long it could take to destroy the evidence or evade capture. *See United States v. One Parcel of Real Property*, 873 F.2d 7, 9 (1st Cir.1989).

[¶ 19] A review of case law in the First Circuit supports the conclusion that two to five seconds may not be a reasonable amount of time to wait before entering a residence using "knock and announce" principles; however, ten seconds is not necessarily an unreasonable wait. *See, e.g., United States v. Garcia*, 983 F.2d 1160, 1168 (1st Cir.1993) (holding that a ten-second wait with a "knock and announce" warrant was not, as a matter of law, too short where officers faced exigent circumstances); *One Parcel of Real Property*, 873 F.2d at 9 (waiting five to ten seconds with a "knock and announce" warrant was not too short when accompanied by previous knocks and shouts at another door by another police officer); *Holmes*, 175 F.Supp.2d at 74–75 (reviewing First Circuit case law); *Sargent*, 150 F.Supp.2d at 160–61 (finding police conducted a *de facto* no-knock entry to an apartment when they smashed down the door after waiting only five seconds for a response to their announcement of presence and intent to enter).

[¶ 20] Under facts almost identical to the facts as presented here, the First Circuit found that law enforcement officers had complied with standards found in the federal "knock and announce" statute. *Garcia*, 983 F.2d at 1168. In *Garcia*, police officers secured a search warrant with information obtained in a controlled buy of cocaine. *Id.* at 1166–67. Upon executing the warrant, the police "knocked loudly" on the front door of the defendants' home and shouted " 'Police, search warrant, open the door.' " *Id.* at 1168. The police waited approximately ten seconds without receiving a response and then forcibly entered the home. *Id.* The court found that, because the officers were searching for cocaine, an easily destructible substance,

the entry was reasonable under the Fourth Amendment. *Id.*

[¶ 21] In the present case, the officers approached what appeared to be the primary entrance to Reynoso's home. They announced loudly that they were law enforcement officers and were there pursuant to a search warrant. This language reasonably announced their presence at the door and their authority for conducting the search to anyone inside. The officers waited approximately ten seconds at each door after announcing their presence and before forcibly entering. Thus, the officers waited a total of at least twenty seconds from first announcing their presence before entering the main residence. *See United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998) ("The proper trigger point, therefore, is when those inside should have been alerted that the police wanted entry to execute a warrant."). From the point of arrival to the forcible entry into Reynoso's home, the officers gave Reynoso enough time to respond to their presence. Moreover, Reynoso had time to yell "wait a minute" several times. Thus, the court did not err in its application of the "knock and announce" standards of the Fourth Amendment to the conduct of the officers in this case.

The entry is:

Judgment affirmed.