STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE

v.

DAWN COLOMY,

Defendant

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT

JAN 0 9 2003

NANCY DESJARDIN
CLERK OF COURTS

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-02-366
DHM - KEN - 1/9/2003

ORDER ON MOTION

DONALD L. GARBRECHT
LAW LIBRARY

MAR 3 2003

This matter is before the court on defendant's motion for a court order requiring discovery production. The defendant has been indicted for possession of schedule W drugs (heroin) (class C) in violation of 17-A M.R.S.A. § 1107. It alleges that on September 16, 2002 in Augusta, the defendant "did intentionally and knowingly possess what she knew or believed to be a scheduled drug and which was in fact a scheduled drug, namely Heroin, a schedule W drug."

The case arises out of a search warrant in the defendant's residence she shared with another person, also indicted. The search warrant was founded, at least in part, on information received from an undisclosed informant identified as CI-2311 and CI-2002L.[1] The confidential informant continues to be confidential and undisclosed. Defendant wishes a court order requiring disclosure arguing that:

> Defendant has denied to the investigating officers that she had any knowledge of the contraband found in her home. The undisclosed informants are potentially witnesses who can testify that persons who had access to that home, other than the defendant, may have been the source of the contraband substances seized.

It is the State's position that the information available from the confidential informant is not material or relevant testimony as described in M.R. Evid. 509(c)(2). The

---

[1] The State represents that the two identifying numbers represent the same person, one being an MDEA number and the other being an Augusta Police Department number.

State asserts that the confidential informant's information was only used in the acquisition of the search warrant. The State further argues that the confidential informant was not present when the search warrant was executed, has no relevant testimony as to the defendant's possession of the contraband at the time of the search warrant and otherwise is subject to the privilege provided by the evidentiary rule.

The defendant relies upon *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623. That decision, which recognizes that the government has a privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law, goes on to hold that the scope of the privilege is limited by its underlying purposes.

> Whether the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way.

*Roviero v. U.S.*, 353 U.S. at 60. The Court concluded that while there is no fixed rule with respect to disclosure, responsibility under threat of abuse of discretion rests with the trial court to determine the circumstances of the case. In *Roviaro*, the Court enumerated a number of items of evidence that were known uniquely to the confidential informant who actually participated in the transaction in question for which the defendant was charged. Further, this court examines the circumstances under the guidance of *State v. Chase*, 505 A.2d 791. Under the circumstances of that case, the confidential informant provided information and undertook a transaction for the police officers. On the basis of that transaction, the officers obtained a search warrant and the defendant was charged with possession as a result of the subsequent search. In that regard, the circumstances are almost identical to the situation at hand. The *Chase* Court found no information relevant to the elements of the crime charged. The Court agreed with the State's position that:

2

> Possession of drugs and paraphernalia at the time the officers executed the search warrant is the only element it needs to prove. The informant, who was not present at that time, is unable to testify to any relevant fact concerning possession.

The Court concluded that the defendant had failed to meet his burden of making a showing to the trial court of some need for disclosure beyond his bare assertion of need.

In the instant case, the defendant's only assertion of relevant trial information in the possession of the confidential informant is that the informant may have information as to the persons having access to the defendant's residence and that those persons may be the source of the contraband forming the basis of the defendant's indictment. However, in order to establish guilt of possession, there is no requirement in the State to prove the source of the unlawful substance, only that the circumstances were such that the defendant can be found to have possessed the contraband through some dominion or control. Even if the defendant could establish through the confidential informant that the heroin was brought into the defendant's residence by others, was owned by others or even was subject to some degree of possession by others, it is only the relationship of the defendant to the contraband that is in question. Unlawful possession need not be exclusive. *See* Alexander, MAINE JURY INSTRUCTION MANUAL, § 6-43 and Discussion, § 6-41. A jury could find either physical control gained with some degree of immediacy or that the ability to gain physical control is substantially exclusive. It is also noted that the intent to gain physical control must also be established. Inasmuch as the confidential information was not present when the search warrant was executed and the possession established, there is no reasonable probability that the informant can give relevant testimony.

3

The entry will be:

Defendant's motion for court order requiring discovery production is DENIED.

Dated: January 9, 2003

Donald H. Marden
Justice, Superior Court

4

STATE OF MAINE
    vs
DAWN COLOMY
24 BOND STREET
AUGUSTA ME 04330

DOB: 01/27/1979
Attorney: C SPURLING
        SPURLING LAW OFFICES
        TWO CHURCH ST
        GARDINER ME 04345
        APPOINTED 10/30/2002

Filing Document: INDICTMENT
Filing Date: 10/18/2002

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2002-00366.

**DOCKET RECORD**

State's Attorney: LARA NOMANI

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   UNLAWFUL POSSESSION OF SCHEDULED DRUGS      09/16/2002 AUGUSTA
    17-A   1107(1)               Class C

## Docket Events:

10/21/2002 FILING DOCUMENT -  INDICTMENT FILED ON 10/18/2002

        TRANSFER -  BAIL AND PLEADING GRANTED ON 10/18/2002

        TRANSFER -  BAIL AND PLEADING REQUESTED ON 10/18/2002

10/21/2002 Charge(s):  1
        HEARING -  ARRAIGNMENT SCHEDULED FOR 10/31/2002 @ 1:00

        NOTICE TO PARTIES/COUNSEL
10/21/2002 Charge(s):  1
        SUMMONS -  SUMMONS TO APPEAR FOR ARRAIGN ISSUED FOR 10/21/2002

10/31/2002 Charge(s):  1
        HEARING -  ARRAIGNMENT HELD ON 10/31/2002
        S KIRK STUDSTRUP , JUSTICE
        Attorney:  C SPURLING
        DA:  LARA NOMANI        Reporter: PHILIP GALUCKI
        Defendant Present in Court

        READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
        DEFENDANT.  21 DAYS TO FILE MOTIONS
10/31/2002 Charge(s):  1
        PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 10/31/2002
        S KIRK STUDSTRUP , JUSTICE
        Attorney:  C SPURLING
        DA:  LARA NOMANI        Reporter: PHILIP GALUCKI
        Defendant Present in Court
10/31/2002 BAIL BOND -  UNSECURED BAIL BOND COND RELEASE ISSUED ON 10/31/2002
        S KIRK STUDSTRUP , JUSTICE
        Defendant Present in Court

$2,000 UNSECURED; NOT USE/POSSESS ALCOHOL/DRUGS; NO CONTACT FRANKLIN ARBOUR, JANA COLOMY,
EDWARD ARBOUR EXCEPT FOR PURPOSES OF CHILD VISITATION AND PARENTING PURPOSES.

10/31/2002 BAIL BOND - $2,000.00 UNSECURED BAIL BOND SET BY COURT ON 10/31/2002
S KIRK STUDSTRUP , JUSTICE
Attorney:  C SPURLING
DA:  LARA NOMANI          Reporter: PHILIP GALUCKI
Defendant Present in Court


NO USE/POSSESSION ALCOHOL/DRUGS; NO CONTACT FRANKLIN ARBOUR; JANA COLOMY OR EDWARD ARBOUR
EXCEPT FOR PURPOSES OF CHILD VISITATION AND PARENTING PURPOSES.

11/08/2002 MOTION -  MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ON 11/08/2002


11/08/2002 MOTION -  MOTION FOR DISCOVERY FILED BY DEFENDANT ON 11/08/2002


12/23/2002 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 01/06/2003 @ 9:00


NOTICE  TO PARTIES/COUNSEL. MOTION FOR DISCOVERY

01/14/2003 HEARING -  MOTION TO SUPPRESS NOT HELD ON 01/06/2003


01/14/2003 HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 01/06/2003


NOTICE  TO PARTIES/COUNSEL

01/14/2003 HEARING -  MOTION FOR DISCOVERY HELD ON 01/06/2003
DONALD H MARDEN , JUSTICE
Attorney:  C SPURLING
DA:  LARA NOMANI          Reporter: JANETTE COOK

01/14/2003 MOTION -  MOTION FOR DISCOVERY UNDER ADVISEMENT ON 01/06/2003
DONALD H MARDEN , JUSTICE

01/14/2003 ORDER -  COURT ORDER FILED ON 01/09/2003
DONALD H MARDEN , JUSTICE
ON MOTION FOR DISCOVERY

01/14/2003 MOTION -  MOTION FOR DISCOVERY DENIED ON 01/09/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST:  _____
                    Clerk

STATE OF MAINE

KENNEBEEC, ss.

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT

JUN 2 0 2003

NANCY DESJARDIN
CLERK OF COURTS

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-02-366

JRA - KEN - ~ ~ ~~

STATE OF MAINE

v.

DAWN COLOMY,

Defendant

**DECISION AND ORDER**

DONALD L. ~~ GARBRECHT
LAW LIBRARY

AUG 6 2003

This matter is before the court on the defendant's motion to suppress. In her motion she claims that her home was searched on September 16, 2002, under the authority of a warrant that was issued without probable cause to believe that her residence contained evidence of unlawful activity. She also complains that during the search she was taken into custody without any basis to do so and interrogated so that her statements must be considered the fruits of this unlawful seizure of her person. Accordingly, she asks that the court order the suppression of any physical objects taken from her home as well as the statements she made to the police that day.

At the hearing on the motion, the defendant, through counsel, orally added another basis to suppress any object that was seized from her home, namely that the affidavit for the search warrant did not provide adequate information to authorize a "no knock/no announce" search.

A testimonial hearing was conducted, memoranda have been filed and the motion is in order for disposition.

I.    **Probable Cause in the Affidavit.**

Probable cause is said to exist when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that

[seizable property will be found in a particular place]." *Carroll v. United States*, 267 U.S. 132, 162 (1925). Said differently, and more recently, probable cause "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . . or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

In order to assess whether probable cause exists to support the issuance of a warrant, the reviewing court is to examine the totality of the circumstances presented to the magistrate and to read the affidavit in support of the warrant in a positive fashion to determine if it can fairly be read to support the decision to issue the warrant. *State v. Knowlton*, 489 A.2d 529, 531-33 (Me. 1985) (citing *Illinois v. Oates*, 462 U.S. 213, 237-40 (1983)). Accordingly, in conducting this review, the affidavit is not to be given a "grudging reading," as to do so would be inconsistent with the "totality of the circumstances" test and the requirement that the affidavit be read "positively." *State v. Lamson*, 640 A.2d 1076, 1081 (Me. 1994). As such, the magistrate's decision to issue the warrant is to be accorded deference so that the inquiry is whether or not there was "a substantial basis" for the magistrate's finding of probable cause with all reasonable inferences that may be drawn to support this decision. *Knowlton*, 489 A.2d at 531-32.

Here the magistrate was presented with considerable information concerning the drug trafficking activities of Frank Arbour (Frank), his girlfriend, Jana Colomy (Jana), and his brother, Eddie Arbour (Eddie). For the most part, this information was provided by a confidential informant, CI-2311, who made a number of "controlled buys" from these three individuals beginning in August of 2002. These controlled buys were monitored by police officials who, by virtue of this investigative process and their

surveillance of CI-2311, were able to corroborate his drug transactions with the two Arbours and Jana. That being so, the magistrate would be justified in considering CI-2311's assertions as credible even though he had a criminal record. Moreover, the police officers involved with this case had significant first-hand evidence that Frank and Jana had engaged in drug trafficking activities in the years preceding the execution of this search warrant and the participation of CI-2311 in this investigation.

With respect to this latter point, the magistrate was told in the affidavit that the affiant, an MDEA agent, executed a search warrant in October of 2001 at the residence of Frank, Jana, and two others in Chelsea, just south of the Augusta city line. As a result of that warrant, the agent found scales with cocaine residue, cocaine cutting agents, packaging materials and five firearms in a room occupied by Frank and Jana. Also located at this residence, albeit in a room occupied by others, were cocaine residue, marijuana and a large supply of prescription medications packaged in plastic bags along with more firearms, some of which were loaded. After the execution of the search warrant, Frank acknowledged that the cocaine and packaging materials found in his room were his, but denied any association with the firearms.

Five months later, in March, 2002, the MDEA agent and Augusta police officers executed another search warrant at the residence of Frank and Jana who had apparently moved in the interim to the Bog Road in Augusta. When the police attempted to enter this residence, Frank tried to prevent them from doing so by slamming the door on a detective's arm after he had learned that the police were there with a warrant. As a result of this search, the police seized seven pounds of marijuana, two sets of scales with cocaine and heroin residue on them, packaging material for cocaine and heroin, over one gram of "bulk" heroin and over $5,000 in cash. Afterwards Frank

acknowledged the marijuana was his and that he had purchased ten pounds of this drug from an out-of-state source. He also agreed the cocaine and heroin were his.

Another five months went by until the MDEA agent and Augusta police officers met CI-2311 who, as noted previously, the magistrate and the officers could reasonably find to be credible as much of what he told the police in the weeks which followed was fully corroborated.

CI-2311 told the police that he knew several people who were dealing in drugs, namely Frank, Jana and Eddie. He said he had never purchased drugs from Jana or Frank but had seen others do so at their home on the Bog Road and at others' apartments when they had delivered large quantities of drugs. CI-2311 agreed to make "controlled buys" for the police.

On August 7, 2002, the police observed CI-2311 purchase $80 worth of marijuana from Jana at a parking lot in Augusta. Jana was driven there by Frank in his black pickup truck.

On August 12, 2002, CI-2311 told the police that he had just met Eddie by chance at a nearby Cumberland Farms store. He identified Eddie as a drug dealer who sells cocaine and heroin. He said that he asked Eddie about the availability of heroin and was told that he, Eddie, had that drug for sale at $35 per bag upon which he gave CI-2311 a cell phone number to call him. Based on this information, the police arranged to have CI-2311 make a controlled buy of heroin from Eddie and call him back on his cell phone for this purpose. As a result of the call, Eddie agreed to the transaction and to meet CI-2311 at the latter's apartment. At about the time the police observed CI-2311 enter his apartment, Frank's truck was seen parked outside the apartment believed by

the police to be occupied by Eddie and his girlfriend Donna (sic) Colomy,[1] Jana's sister. A few minutes later, an officer conducting this surveillance observed Frank and Eddie meeting, presumably outside this apartment, after which Eddie was seen walking in CI-2311's direction. Minutes later Eddie sold CI-2311 two packets of heroin and was then observed leaving the site of the transaction and walking on to Bond Street where he entered the address at 24 Bond Street. Frank's truck was still there. During this transaction, CI-2311, observed Eddie take the heroin packets from a black bag which contained other baggies which appeared to contain heroin. Eddie also told CI-2311 that he usually has drugs, but when he is out, he can get more quickly.

The police believed that 24 Bond Street was Eddie's residence with Dawn because the affiant had seen him "hanging around" the front of the building on numerous occasions and because CI-2311 told the police that Eddie lived there with his girlfriend "Donna."

On August 14, 2002, CI-2311 made a controlled buy of marijuana from Jana at her residence on the Bog Road. The police monitored this transaction with a listening device and could hear dogs barking at this residence.

On August 19, 2002, CI-2311 told the police that he had been to Jana and Frank's home on the Bog Road where Jana had shown him a large amount of marijuana and heroin. She also told CI-2311 that she would be babysitting for "Donna" that afternoon at Bond Street. While the police monitored the phone, CI-2311 telephoned Jana at Bond Street and was told that she would only sell marijuana there but that heroin would be available the next day. CI-2311 then agreed to purchase marijuana and would come by shortly to do so.

---

[1] It is obvious from the warrant that Donna Colomy is Dawn Colomy.

The police then observed CI-2311 go to 24 Bond Street and enter the apartment. Shortly after he entered, an unidentified older man walked out of the apartment and stood by Frank's truck. According to the affiant, this man was "looking around" as though he was "acting as surveillance." Affidavit, ¶ 55. After CI-2311 had made his purchase at 24 Bond Street, police observed this man walk to the Cumberland Farms store where he was joined after a brief time by Frank and Jana and a conversation ensued among the three of them.

CI-2311 told the police that he had been let into 24 Bond Street by Eddie whereupon he met Jana, Frank and an older man he did not know. At this point the man left and stood near the vehicles outside the apartment. Jana then sold CI-2311 a baggie of marijuana which had been on top of the refrigerator.

On August 21, 2002, CI-2311 told the police that Jana had contacted him the previous evening, telling him that she had cocaine and heroin and he should call her the next day to set up a deal. Accordingly, the police again arranged for a controlled buy with surveillance and CI-2311 proceeded to Jana's and Frank's residence on the Bog Road at her invitation. There CI-2311 purchased two baggies of heroin. Present during this transaction was Jana's sister whose name CI-2311 did not know.

On September 6, 2002, CI-2311 told the police that he had met Frank the night before who had told him he could buy heroin from him at a price of $25 per bag and that all he had to do was call him to make a purchase. Again, the police arranged for a controlled buy and CI-2311 went to Frank and Jana's residence on the Bog Road, after calling Frank to arrange to purchase four bags of heroin. There CI-2311 purchased the four bags of heroin for $100. During this transaction, the police again heard dogs barking at Frank's home via the listening device they used. CI-2311 told the police that Frank told him he could come by the next day for more.

Applying the deferential standard required in examining a magistrate's determination of probable cause, this court concludes that there was a substantial basis for that official to find probable cause to authorize a warrant to search the apartment at 24 Bond Street for drugs and related evidence.

First, as already noted herein, the police had ample corroboration of the facts recited in the warrant's affidavit either by first-hand observation, or surveillance and monitoring of their informant. Thus, it would be reasonable for the police and the magistrate to believe that Frank and Jana were significant, long-term drug traffickers who sold drugs out of their own home and either delivered to, or sold drugs from, the residences of others on occasion. Importantly also, they would be justified in believing that Eddie was also a drug trafficker who acted in concert with his brother and Jana. The basis for this belief would be that CI-2311 told the officers that Eddie was a drug dealer, that Eddie sold him (CI-2311) two packets of heroin, had more to sell, and had invited further transactions.

The magistrate would also be justified in concluding that there was a sufficient nexus between Frank, Eddie and Jana's drug trafficking and 24 Bond Street to believe that drugs might be found there. Also, CI-2311 told the police that Eddie lived at 24 Bond Street and the police had made observations that were consistent with that information. More to the point, on the occasion when Eddie sold heroin to CI-2311, August 12, 2002, Eddie was observed meeting with Frank outside 24 Bond Street and then leaving "his" residence to meet the informant. After the sale, he returned to the same address where Frank's truck had been parked.

A week later, CI-2311 was invited to 24 Bond Street by Jana to purchase marijuana there, because she "would sell only marijuana while on Bond Street," suggesting that Jana sold drugs from that address, but only marijuana. Affidavit, ¶ 52.

When he arrived, there appeared to be a lookout, he was greeted by Eddie and met Frank and Jana inside where the transaction took place. From all this, it would be reasonable to conclude that Frank, Jana and Eddie sold illegal drugs from Frank and Jana's home and Eddie's as well. Additionally, "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

That the defendant presented testimony at the hearing that Eddie did not live at 24 Bond Street, but only visited there periodically to visit his child, does not affect the court's conclusion that there was probable cause to search 24 Bond Street. Nor does the circumstance that the police could have done more to connect Eddie Arbour with this residence. The sufficiency of probable cause to search cannot be judged by new facts which the magistrate did not have when he authorized the warrant. That is because the determination of probable cause must be evaluated by a magistrate, and later by a reviewing court, on the basis of the totality of the circumstances then known, not as may be later developed. *U.S. v. Certain Real Property Located on Hanson Brook*, 770 F.Supp. 722, 731 (D.Me. 1991) (citations omitted). In this regard, "there is no requirement that the belief [of a magistrate] be shown to be necessarily correct or more likely true than false." *United States v. Feliz*, 182 F.3d 82, 87 (1st Cir. 1999) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

The defendant also argues that the probable cause to search 24 Bond Street was "stale," that is, that the two drug transactions directly associated with this address occurred on August 12 and August 19, 2002, so that 32 and 25 days, respectively, had gone by before the magistrate issued the search warrant. This argument ignores the circumstance, however, that Frank and Jana continued to sell drugs elsewhere right up to September 6, 2002, a week before the warrant issued, that Eddie had been involved

with their drug trafficking activities in the past, and that there would be no reason to believe that he had stopped his participation in this continuing endeavor. Moreover, as has been observed, drug trafficking, because it involves an on-going enterprise, may be subject to a more forgiving test as to staleness because of the nature of this criminal activity. That is to say that where, as here, there is a history of long-term drug trafficking, it is likely that drugs will be found at a drug dealer's residence, even if substantial time has elapsed since the last verified transaction. *See Feliz v. United States, id.* This being so, the court concludes that the probable cause to search 24 Bond Street or any other venue from which Frank, Eddie or Jana sold drugs was not stale when the warrant was issued.

Even if this court's analysis and the magistrate's findings as to probable cause were erroneous, it must nevertheless be concluded that the affiant, and the officers associated with him in this case, acted in good faith and reasonable reliance on a search warrant which was issued by a neutral magistrate. As such, the Supreme Court's holding in *Leon v. United States*, 468 U.S. 897, 922-25, relieves the prosecution in this case from the effect of the exclusionary rule ordinarily imposed upon law enforcement when probable cause is not established. In reaching this conclusion, the court finds none of the four factors cited in *Leon* have been established which would extinguish the good faith exception to the probable cause requirement for a search warrant. *Id.* at 923. Thus, there is no basis to believe that the magistrate in this case was misled by information in the affidavit which the affiant knew or should have known was false, that the magistrate abandoned his judicial role, or that the warrant was based on an affidavit so lacking in indicia of probable cause so as render official belief in its existence entirely unreasonable, or that the warrant was facially deficient. *Id.* All this being so, the

warrant and the evidence seized as a result of its execution are not to be suppressed on the claim that there was no probable cause to support its issuance.

## II.    No Knock, Nighttime Search.

At the hearing on the motion to suppress, counsel for the defendant advised the court that he was contesting the warrant and the search which followed because there was no justification expressed in the affidavit for a "no knock/no announce" search. Ordinarily, a claim of this nature must be articulated in the motion to suppress itself. *State v. Reynoso-Hernandez*, 2003 ME 19, ¶ 6, 816 A.2d 826, 829. The failure to do so relieves the prosecution from justifying the challenged police action. *Id.* Here, the defendant's motion makes no mention of a challenge to the "no knock/no announce" execution of the warrant. When her counsel announced at the hearing that she wished to do so, however, the State did not object and proceeded at the hearing to argue the merits of this challenge and then brief the issue. Accordingly, the court concludes that the State has acquiesced to the submission of this claim for resolution by this court.

The same cannot be said for the "nighttime" aspect of the search.[2] No mention of this objection to the execution of the warrant was made in the motion or at the hearing, and no argument on this topic was offered at the end of the hearing on the motion. The first the court learned of this potential challenge to the search was its expression in the defendant's post-hearing memorandum. As such, the prosecution was denied the opportunity to present evidence to justify a nighttime search and the court has been prevented from fully evaluating this claim. *State v. Reynoso-Hernandez, id.,* ¶ 8, 816 A.2d at 829. From this, the court must conclude that the defendant has waived any objection to the nighttime aspect of the search of her home, and it will not be here addressed.

---

[2] A "nighttime search" occurs after 9:00 p.m. and before 7:00 a.m. M.R. Crim. P. 41(h). In this case, the police entered the defendant's home at 6:15 a.m.

Returning, then, to the justification for the no knock/no announce entry of the defendant's home, her argument is only that the affidavit for the search warrant provides insufficient justification for such a search.[3] In that document, the affiant told the court that he was requesting a no knock warrant for the following reasons: in the execution of the warrant in October of 2001 at Frank and Jana's home in Chelsea, stolen firearms were found; during the execution of the warrant at their home in March of 2002, Frank attempted to stop the police from entering his home on the Bog Road by slamming its door on the arm of an officer; Frank has dogs at his residence on the Bog Road which would alert its occupants to the approach of officers so that they could hide or destroy evidence.[4] Finally, the affiant told the court that because of these circumstances he was concerned that without no knock authority the "occupants" would have time to barricade themselves and/or destroy the evidence being sought. Affidavit, p. 15.

In the court's view, these "facts" are sufficient to justify the no knock search which was conduced at 24 Bond Street on the morning of September 16, 2002.[5] While it is true that neither guns nor dogs were ever observed at this address, Frank did use 24 Bond Street with his brother and girlfriend as a venue to carry on his, and their, drug trafficking enterprise. As such, the police and the magistrate could reasonably believe

---

[3] No claim was made at the hearing or in the defendant's memorandum that the actual execution of the warrant was unreasonable. Had the defendant done so, the State would have had to have established that the police, under the totality of the circumstances they were facing, had reasonable justification that "knocking and announcing presence would be dangerous or futile or inhibit effective investigation of crime." *State v. Reynoso-Hernandez, id.,* ¶ 17, 816 A.2d at 832 (citing *United States v. Hawkins,* 139 F.3d 29, 32 (1st Cir. 1998)). Because the State had no notice of such a claim, it was not required to offer evidence of the necessity of a no knock/no announce search. *Id.,* ¶¶ 8, 9, 816 A.2d at 829-30.

[4] The affiant also asserted that Frank was aware of a federal investigation against him for trading guns for drugs and obtaining guns illegally. The affiant does not say how he or Frank would be aware of such information or why this would justify a no knock search, except, inferentially, that Frank had guns and might use them.

[5] Testimony at the hearing on this motion showed that the police entered at 24 Bond Street through an unlocked door, weapons drawn, and announced their presence as they entered.

that the execution of this warrant might find Frank at this address who might be armed and might, again, forcibly resist police efforts to enter. By the same token, it would also be reasonable to believe that Frank, Jana and Eddie would know that the execution of a warrant might also result in the seizure of inculpatory evidence as had twice before occurred at Frank and Jana's residences. That being so, they would be motivated to resist entry or destroy evidence of drug trafficking after being alerted to police presence outside. Finally, while it is not articulated in the affidavit as a basis for a no knock search, common sense tells one that drugs are easily and quickly destroyed and that experienced drug traffickers would have the motivation and the opportunity to dispose of such contraband were they to be given even short notice of police intentions to search the place where illegal drugs are kept or sold.[6]

Even if this court's finding that the affidavit provided a sufficient factual basis to authorize a no knock warrant is incorrect, the good faith exception to the exclusionary rule would be applicable. *See United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998). That is because the court finds that the officers who executed the warrant in this case were objectively reasonable in their reliance on the no knock provision of the warrant, even though the issuing judicial officer "should have required a more particularized showing of exigent circumstances" to search without a warning. *United States v. Rivera*, 2000 U.S. Dist. LEXIS 7997. Thus, as it has been observed here, the magistrate was not given information that Eddie or Dawn had guns so that the police should be concerned about an armed assault from them when entering their residence. However, the magistrate was told that their cohorts had guns in the past, Frank had used force to interfere with the execution of a warrant before, and that Frank and Jana, along with

---

[6] There is, however, no per se rule which allows a no knock search in drug cases. *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

Eddie, had used the latter's apartment for drug trafficking in recent weeks. This was all based on reliable, corroborated information possessed by the police that they had passed on to the magistrate and would allow the officers to reasonably believe that the warrant authorizing the no knock search was valid and necessary for their own safety. "The exclusionary rule is aimed at deterring police misconduct. Excluding evidence seized by police in good faith reliance on a facially valid warrant would not deter misconduct." *United States v. Moland*, 996 F.2d 259, 261 (10ᵗʰ Cir. 1993) (citing *United States v. Medlin*, 798 F.2d 407, 409 (10ᵗʰ Cir. 1986)).

For these reasons the evidence seized from the defendant's apartment will not be suppressed on the basis that there was insufficient information in the affidavit to authorize a "no knock" search.

III.   **Defendant's Statements.**

Because the court has concluded that the execution of the warrant at the defendant's home on September 16, 2002, was lawful, it need not address her claim that her statements cannot be admitted in evidence as "fruits of the poisonous tree." However, as the State has conceded, her answers to questions just after the police entered the apartment that morning are to be suppressed because she was in custody and had neither been advised of her *Miranda* rights nor had waived them. The State makes this concession even though the questions asked were simply designed to learn the whereabouts of Eddie and the children.

When the police entered the defendant's home, she was plainly in custody. She was placed in handcuffs and at least one officer had pointed his gun at her. This detention and confrontation, however, were brief, the handcuffs were removed and she was allowed to move around her apartment albeit only with permission and in the company of an officer. Nevertheless, these circumstances also constitute custody as the

defendant's freedom was substantially impaired by the police, she had just been handcuffed and had had a firearm pointed at her. Moreover, her home was occupied by as many as ten officers so that the atmosphere there was certainly police dominated. All this being so, a reasonable person in the defendant's position would have believed that her freedom was restrained to "the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994). No one interrogated the defendant during this time, however, so that there are no statements which may be subject to suppression even though she was in a custodial circumstance and had not been advised of her *Miranda* rights.

After the defendant had been given more freedom, Detective Massey of the Augusta Police Department asked her if she would speak with him in private. After she agreed to this, the two went outside to Detective Massey's car. There he told her that the police had found heroin upstairs but that he was unsure if she would be arrested for that offense. Next, he advised her of her *Miranda* rights and she acknowledged her understanding of them, agreed to speak with the detective, and executed a form waiving these rights. Following this, a conversation of about 15 to 20 minutes occurred in which Detective Massey asked the defendant about drug trafficking from her apartment and Eddie's role in such activities. After this conversation, the defendant was not arrested and both participants went back into the apartment, although the defendant was still not free to leave. Later, the defendant was given a summons for heroin possession.

Later that day, Detective Massey and the defendant spoke with each other by phone several times. During one of these conversations, the detective told the defendant that if she helped get Eddie, such cooperation would help with the D.A. It is

unknown if the defendant provided that assistance or made any potentially incriminating statements as a result of this promise.

From all this, it is plain that any statements the defendant may have made to Detective Massey in his car are admissible. Although this was a custodial interrogation, the defendant was advised of, and waived, her *Miranda* rights. Moreover, there has been no suggestion that her statements to Detective Massey were involuntary. Finally, while later on Detective Massey may have promised leniency to the defendant in return for her cooperation, there is no evidence that such a promise resulted in any inculpatory statements.

Finally, the defendant says that because the police did not have probable cause to arrest her, any statements she made after being detained must be suppressed. If that were so, then the police would be barred from interviewing potential witnesses being detained at the scene of a crime, even if they were potential suspects and even if *Miranda* warnings were provided. Instead, it appears that the defendant may have confused concepts of detention, custody and arrest.

Law enforcement officials have the authority to detain individuals at the site of the execution of a search warrant. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Under such a circumstance, there is no prohibition against speaking with such a person. Obviously also, providing that person with the *Miranda* warnings is an appropriate measure to insure that the individual being detained is aware of her rights against self-incrimination. Finally, even if the defendant's argument had validity, at the time the defendant was in Detective Massey's custody and being interrogated by him, he and the other officers there had probable cause to believe she had committed the crime of heroin possession and could have arrested and, with her permission, interrogated her. In sum, there is no basis here to conclude that the police violated any of the defendant's

constitutional rights, including her right to be arrested only on probable cause, so that her statements to Detective Massey would be subject to suppression.

## IV.    Conclusion.

For the reasons stated herein, the Motion to Suppress is DENIED.

Dated: June_____, 2003

John R. Atwood
Justice, Superior Court

```
STATE OF MAINE                                    SUPERIOR COURT
     vs                                           KENNEBEC, ss.
DAWN  COLOMY                                       Docket No  AUGSC-CR-2002-00366
24 BOND STREET
AUGUSTA ME 04330                                      DOCKET  RECORD

DOB: 01/27/1979
Attorney: C SPURLING                     State's Attorney: LARA NOMANI
          SPURLING LAW OFFICES
          TWO CHURCH ST
          GARDINER ME 04345
          APPOINTED 10/30/2002

Filing Document: INDICTMENT                  Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 10/18/2002
```

## Charge(s)

```
1   UNLAWFUL POSSESSION OF SCHEDULED DRUGS       09/16/2002 AUGUSTA
    17-A   1107(1)                  Class C
```

## Docket Events:

```
10/21/2002 FILING DOCUMENT -  INDICTMENT FILED ON 10/18/2002

           TRANSFER -  BAIL AND PLEADING GRANTED ON 10/18/2002

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 10/18/2002

10/21/2002 Charge(s): 1
           HEARING -  ARRAIGNMENT SCHEDULED FOR 10/31/2002 @ 1:00

           NOTICE TO PARTIES/COUNSEL
10/21/2002 Charge(s): 1
           SUMMONS -  SUMMONS TO APPEAR FOR ARRAIGN ISSUED FOR 10/21/2002

10/31/2002 Charge(s): 1
           HEARING -  ARRAIGNMENT HELD ON 10/31/2002
           S KIRK STUDSTRUP , JUSTICE
           Attorney:  C SPURLING
           DA:  LARA NOMANI        Reporter: PHILIP GALUCKI
           Defendant Present in Court

           READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
           DEFENDANT.  21 DAYS TO FILE MOTIONS
10/31/2002 Charge(s): 1
           PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 10/31/2002
           S KIRK STUDSTRUP , JUSTICE
           Attorney:  C SPURLING
           DA:  LARA NOMANI        Reporter: PHILIP GALUCKI
           Defendant Present in Court
10/31/2002 BAIL BOND -  UNSECURED BAIL BOND COND RELEASE ISSUED ON 10/31/2002
           S KIRK STUDSTRUP , JUSTICE
           Defendant Present in Court
```

Printed on: 06/20/2003

$2,000 UNSECURED; NOT USE/POSSESS ALCOHOL/DRUGS; NO CONTACT FRANKLIN ARBOUR, JANA COLOMY, EDWARD ARBOUR EXCEPT FOR PURPOSES OF CHILD VISITATION AND PARENTING PURPOSES.

10/31/2002 BAIL BOND - $2,000.00 UNSECURED BAIL BOND SET BY COURT ON 10/31/2002
S KIRK STUDSTRUP , JUSTICE
Attorney:  C SPURLING
DA:  LARA NOMANI          Reporter: PHILIP GALUCKI
Defendant Present in Court


NO USE/POSSESSION ALCOHOL/DRUGS; NO CONTACT FRANKLIN ARBOUR; JANA COLOMY OR EDWARD ARBOUR EXCEPT FOR PURPOSES OF CHILD VISITATION AND PARENTING PURPOSES.

11/08/2002 MOTION -  MOTION TO SUPPRESS EVIDENCE FILED BY DEFENDANT ON 11/08/2002


11/08/2002 MOTION -  MOTION FOR DISCOVERY FILED BY DEFENDANT ON 11/08/2002


12/23/2002 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 01/06/2003 @ 9:00


NOTICE  TO PARTIES/COUNSEL. MOTION FOR DISCOVERY

01/14/2003 MOTION -  MOTION TO SUPPRESS EVIDENCE UNDER ADVISEMENT ON 03/03/2003
JOHN R ATWOOD , JUSTICE

01/14/2003 HEARING -  MOTION TO SUPPRESS NOT HELD ON 01/06/2003


01/14/2003 HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 01/06/2003


NOTICE  TO PARTIES/COUNSEL

01/14/2003 HEARING -  MOTION FOR DISCOVERY HELD ON 01/06/2003
DONALD H MARDEN , JUSTICE
Attorney:  C SPURLING
DA:  LARA NOMANI          Reporter: JANETTE COOK

01/14/2003 MOTION -  MOTION FOR DISCOVERY UNDER ADVISEMENT ON 01/06/2003
DONALD H MARDEN , JUSTICE

01/14/2003 ORDER -  COURT ORDER FILED ON 01/09/2003
DONALD H MARDEN , JUSTICE
ON MOTION FOR DISCOVERY

01/14/2003 MOTION -  MOTION FOR DISCOVERY DENIED ON 01/09/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL

01/29/2003 MOTION -  MOTION TO CONTINUE FILED BY STATE ON 01/28/2003


01/29/2003 MOTION -  MOTION TO CONTINUE GRANTED ON 01/28/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL

02/19/2003 MOTION -  MOTION TO CONTINUE FILED BY STATE ON 02/19/2003


DA:  LARA NOMANI
STATE WITNESS OFFICER TRACEY NOT AVAILABLE FOR THE 2/20/03 HEARING.

02/19/2003 MOTION -  MOTION TO CONTINUE GRANTED ON 02/19/2003
S KIRK STUDSTRUP , JUSTICE
COPY TO PARTIES/COUNSEL

03/05/2003 HEARING -  MOTION TO SUPPRESS HELD ON 03/03/2003 @ 1:00
JOHN R ATWOOD , JUSTICE
Attorney:  C SPURLING
DA:  LARA NOMANI          Reporter: PHILIP GALUCKI
Defendant Present in Court

Printed on: 06/20/2003

STATE'S WITNESSES WERE: TORI TRACY AND DETECTIVE MASSEY.  DEFENSE WITNESS WAS TIM CLARK
(DEFENDANT'S BOYFRIEND).

UNDER ADVISEMENT
03/17/2003 OTHER FILING -  MEMORANDUM OF LAW FILED ON 03/17/2003

Attorney:  C SPURLING
MEMO ON MOTION TO SUPPRESS
03/17/2003 OTHER FILING -  MEMORANDUM OF LAW FILED ON 03/17/2003

DA:  LARA NOMANI
04/02/2003 OTHER FILING -  OTHER DOCUMENT FILED ON 04/02/2003

Attorney:  C SPURLING
DEFENDANT OBJECTS TO THE STATE'S ARGUMENT PRESENTED IN ITS 3/27/03 LETTER AS UNTIMELY.
06/20/2003 MOTION -  MOTION TO SUPPRESS EVIDENCE DENIED ON 06/20/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL
06/20/2003 ORDER -  COURT ORDER FILED ON 06/20/2003

DECISION AND ORDER FILED ON MOTION TO SUPPRESS

A TRUE COPY
ATTEST: _____
                      Clerk