STATE OF MAINE                                    SUPERIOR COURT

Sagadahoc, ss.


STATE OF MAINE

               v.                        Docket No. SAGSC-CR-08-182

WALTER BENNETT
a/k/a Walter Kruse

               Respondent

                ORDER DENYING MOTION TO SUPPRESS

        Defendant's Motion to Suppress is before the court for decision. The motion was
the subject of an evidentiary hearing at which the State and the Defendant both presented
evidence. The Defendant and the State have both filed memoranda of law.

        Based on the entire record, the court makes the following findings of fact and
adopts the following conclusions of law, and denies the motion.

                              Background

        For purposes of this motion, the facts are largely undisputed.

        On July 14, 2008, agents of the Maine Drug Enforcement Administration
(MDEA) applied for and obtained a search warrant regarding "the residence and
premises" of the Defendant Walter Bennett a/k/a Walter Kruse, described as being at 2
Shaw St., Bath, Maine. *See* In re Walter Bennett a/k/a Walter Kruse, West Bath Dist. Ct.
Docket No. WES-SW-08-018 (search warrant docketed July 24, 2008).

        The warrant describes the real property to be searched as follows:

The residence and premises of Walter Kruse DOB: 6/30/66, AKA Walter Bennet [sic], 2
Shaw Street, Bath, Maine. The residence is more fully described as a 2 story wood
structure with off white siding that appears to be vinal [sic]. If one was to enter Shaw
Street from Washington Street it is the second drive way on the left. There is the number
2 on the front of the residence. There is a detached newly constructed shed at the front of
the driveway on the right side of the house if one was looking at it from Shaw Street.
The resid[e]nce shares the outside rear wall with 470 Washington Street, which is a
multi-family apartment building. There is no entry through this wall and the buildings
are separate other than this wall.

                                     1

The warrant also authorized the search of vehicles and persons associated with the 2 Shaw Street property, including the Defendant. The warrant authorized the seizure of items including methamphetamine and drug paraphernalia and other material associated with the manufacturing of, trafficking in, furnishing of and/or possession of methamphetamine.

In the course of the search, MDEA agents seized evidence from a shed located near the 2 Shaw Street structure. For purposes of this suppression motion, the court assumes that the evidence seized supports the Class B charge of trafficking in methamphetamine, 17-A M.R.S. § 1103)(1-A)(A) presented in count 1 of the indictment in this case.

The Defendant's motion to suppress seeks to suppress all evidence seized from the shed. The Defendant contends, and the evidence at hearing confirms, that the shed is actually not located on the 2 Shaw Street lot, but is in fact located on an abutting lot associated with a different street address, 470 Washington Street. Because the warrant authorizes a search of the Defendant's "residence and premises" at 2 Shaw Street, and because the shed is not part of the premises in terms of being on the 2 Shaw Street lot, the Defendant asserts that the search of the shed was beyond the scope of the search authorized by the warrant.

## Findings of Fact

The evidence presented at the hearing confirmed the shed is not located on the lot associated with the street address named in the warrant. The shed is what the parties have described as "makeshift," meaning that it was not prefabricated off site but rather appears to have been constructed from available materials at or near where it now sits. Based on the photographs admitted, it appears to be about six or seven feet square, and to have plywood walls and a plywood roof. The roof appears to be covered with all-weather carpeting that hangs down most or all of the walls, and the shed has a door that was obviously salvaged from another use.

The small lot at 2 Shaw Street abuts the much larger lot at 470 Washington Street on two sides. The 2 Shaw Street lot contains a single family residence as the primary structure that at its rear shares a wall with a larger apartment building on the 470 Washington Street lot. According to Scott Davis, the city code enforcement officer, the shed was built on the lot associated with 2 Shaw Street and might originally have been straddling the common boundary between 2 Shaw Street and 470 Washington Street. At some point, Mr. Davis sent a letter to David Gilbert, owner of both the Shaw Street and Washington Street properties, directing that the shed be moved off the lot at 2 Shaw Street. In compliance with the letter, the shed was moved entirely off the lot at 2 Shaw Street and onto the lot at 470 Washington Street. It is clear from the evidence that the move occurred before the search warrant was issued, and that at the time of the application and search, the shed was sitting on the 470 Washington Street lot.

Despite the fact that the shed does not actually sit on the 2 Shaw Street lot, the photographic evidence and testimony at hearing indicates that the shed sits three or four feet from the residence at 2 Shaw Street, at the end of the driveway for that residence. A comparison of the photographs admitted as State's Exhibits 3 and 4 indicates the shed sits within 3 or 4 feet of the 2 Shaw Street home and two or three times farther away from the 470 Washington Street building. Also, the shed door faces Shaw Street, and is on the opposite side of the shed from the 470 Washington Street structure, implying that the shed is accessed from Shaw Street instead of 470 Washington Street.

Based on the location of the shed itself, and the location of the door on the shed, a reasonable observer would be more likely to associate the shed with the 2 Shaw Street residence than to associate it with the 470 Washington Street apartment building.

## Conclusions of Law

As the Law Court has said, "when a defendant moves to suppress evidence alleging that the State has exceeded its authority pursuant to the Fourth Amendment, the burden of articulating facts sufficient to demonstrate the possible illegality of the search or seizure rests with the defendant. State v. Reynoso-Hernandez, 2003 ME 19, ¶6, 816 A.2d 826, 829 (citing State v. Desjardins, 401 A.2d 165, 169 (Me. 1979)).

The validity of a search warrant depends on whether it is supported by probable cause—not an issue in this case—and whether it contains a description of the property to be searched that is sufficiently specific so as to enable the officers executing the warrant to understand the precise scope of the search authorized. "A warrant must describe the property to be seized with such particularity that an executing officer will be able to identify it 'with certainty.'" State v. Pelletier, 673 A.2d 1327, 1329 (quoting State v. Sweatt, 427 A.2d 940, 949 (Me. 1981)).

On the other hand, "[a] technical description of the place to be searched is not necessary." State v. Brochu, 237 A.2d 418, 422 (Me. 1967). Cases elsewhere confirm that even "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." United States v. Lora-Solano, 330 F.3d 1288, 1294 (10th Cir. 2003). The warrant's description of property to be searched specifically identifies the shed in terms of its location next to the 2 Shaw Street residence. There is no evidence of any other sheds in the vicinity, and no evidence to suggest that there could be room for confusion as to which shed is described.

Moreover, even if the warrant itself were ambiguous, as the Law Court has noted, "it has long been settled law in Maine that a search warrant and its supporting affidavit may be read together to supply a particular description of the place to be searched." State v. Peakes, 440 A.2d 350, 353 (Me. 1982) (quoting State v. Corbin, Me., 419 A.2d 362 (1980); State v. Comolli, 101 Me. 47, 63 A. 326 (1905)). The affidavit clearly identifies the shed as a target of the proposed search, even going to the extent of describing illegal drug transactions alleged to have occurred in the shed.

3

Finally, the fact that the shed reasonably appears to be associated with the 2 Shaw Street premises further validates the warrant description and the search of the shed. As the United States Court of Appeals for the First Circuit has recently noted, "[s]o long as the officers executing the warrant have an objectively reasonable basis, in light of the known characteristics of the location and the evidence at hand, for concluding that a structure is appurtenant to the premises specified in the search warrant, that structure may validly be searched under the purview of the warrant." United States v. Fagan, 2009 U.S. App. LEXIS 18046, at 6 (1st Cir. Aug. 13, 2009). As noted above, based on the location of the shed and the shed door with respect to 2 Shaw Street, the conclusion of the affiant in this case that the shed was appurtenant to the 2 Shaw Street premises was indeed objectively reasonable.

For all of these reasons, Defendant's Motion to Suppress is denied.

Dated August 24, 2009

Justice, Superior Court
Hon. Andrew M. Horton

4