**STATE of Maine**

**v.**

**Jonathan W. FAULKNER.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 3, 1991.

Decided Feb. 26, 1991.

William R. Anderson, Dist. Atty., Leane Zainea, Asst. Dist. Atty., Rockland, for the State.

Robert J. Levine, Strout, Payson, Pellicani, Hokkanen, Strong & Levine, Rockland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

BRODY, Justice.

Defendant Jonathan Faulkner appeals from a judgment entered in the Superior Court (Knox County, *Silsby, J.*) after he was convicted of theft in violation of 17–A M.R.S.A. § 353 (1983). Faulkner contends that the court (*McKinley, J.*) erred in refusing to suppress the fruits of a warrantless search that he alleges was conducted without his consent.

The basic facts are not in dispute. On April 12, 1989, after leaving the Camden YMCA, William Forrest discovered that $1,000 in $100 bills was missing from his pants pocket. On his way back to the YMCA, he met two young men—Faulkner and a companion, Burton Coffey—whom he had earlier observed in the locker room. At Forrest's request, they agreed to accompany him to the Camden Police Department. There, Officer Clifford Roberts took all three men into a private office because of construction noise in the lobby. After listening to their story, Officer Roberts asked Coffey and Faulkner to empty their pockets onto a table so that he could eliminate them as possible suspects. They readily complied.

Officer Roberts examined Coffey's personal effects first, then without warning patted him down. He next examined the items placed on the table by Faulkner and asked him if he had anything else. Faulkner answered, "No," and lifted his shirt and turned out the waistband of his pants as if "to show that there was nothing else there." Officer Roberts patted him down and discovered ten $100 bills in his right back pocket. Faulkner blurted out, "That's all of it," adding that Coffey had nothing to do with the theft. Officer Roberts read the Miranda warning to Faulkner, who then confessed to taking the money.

Following his indictment for theft, Faulkner pleaded not guilty and filed two motions to suppress the tangible evidence and statements resulting from the warrantless search by Officer Roberts. After a hearing, the court denied both motions upon finding that Faulkner had voluntarily consented to the search. Faulkner entered a conditional guilty plea pursuant to M.R. Crim.P. 11(a)(2) on which he was convicted.

On appeal, Faulkner argues that the court erred in denying his motions to suppress the product of the search and his resulting statements. He contends that he did not voluntarily consent to a search of either his belongings or his person by Officer Roberts. He also contends, alternatively, that Officer Roberts exceeded the bounds of any voluntary consent that reasonably could have been inferred from his actions.

"Upon a motion to suppress the fruits of a warrantless search the State carries the burden of demonstrating by a preponderance of the evidence that an objective manifestation of consent was given by word or gesture by one bearing an appropriate relationship to the property searched." *State v. Fredette*, 411 A.2d 65, 68 (Me.1979) (citations omitted). This burden is not met by a showing of no more than "a mere 'acquiescence to a claim of lawful authority.' " *State v. Cress*, 576 A.2d 1366, 1367 (Me. 1990) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)). Rather, the State must prove that the consent was freely and voluntarily given and was not the product of express or implied coercion. *State v. Fredette*, 411 A.2d at 68.

Voluntariness is a question of fact to be determined from the totality of the circumstances. *State v. Koucoules*, 343 A.2d 860, 873 (Me.1974). In a preliminary proceeding to determine the admissibility of evidence, the court acts as a fact finder, and its finding of voluntary consent to a search will not be set aside unless it is clearly erroneous. *State v. Cress*, 576 A.2d at 1367. A finding is clearly erroneous only if there is no competent evidence in the record to support it. *State v. Reeves*, 499 A.2d 130, 132 (Me.1985).

Applying these standards to the facts of this case, we cannot say that the court's finding of voluntary consent is clearly erroneous.[1] The record discloses that Faulkner readily accompanied Forrest to the police station, followed Officer Roberts into a private office there, and emptied

---

1. The court's apparent rationale for its finding of voluntary consent, that Faulkner cooperated and assisted in his search, accords with our decision in *State v. Cress*. In *Cress*, where the defendant taxidermist helped game wardens to empty a freezer in which untagged and illegally obtained migratory fowl were stored, we affirmed the District Court's finding that the defendant's "active cooperation and assistance constituted an expression of consent." *State v. Cress*, 576 A.2d at 1367.

his pockets onto a table at the officer's request. There is competent record evidence to show that Faulkner submitted his coat for Officer Robert's inspection without being asked to do so. Furthermore, the record supports the court's finding that Faulkner assisted in his pat-down by lifting his shirt and turning out the waistband of his pants.

The record also makes clear, contrary to Faulkner's contention, that his consent was not tainted merely because the search occurred at the police station. Officer Roberts invited the parties into a private office simply to avoid the noise of construction in the lobby. Faulkner was not alone but in the company of Coffey and Forrest when the search of his belongings and person took place. The time between his entering the office and the discovery of the money by Officer Roberts was no more than twelve minutes. Finally, there is no indication in the record that Faulkner was confused, pressured, or intimidated.[2]

Moreover, the record belies Faulkner's contention that Officer Roberts by conducting the pat-down search exceeded the scope of any voluntary consent that reasonably could have been inferred from Faulkner's gestures in reference to his belongings. While a consent search is legal only to the extent of the consent, "[w]here permission has been given to search for a particular object, the ensuing search remains valid as long as its scope is consistent with an effort to locate that object." *State v. Koucoules*, 343 A.2d at 866, 868.[3] Before Officer Roberts patted down Faulkner, he patted down Coffey in Faulkner's presence. Not only did Faulkner fail to object to his imminent pat-down, which he had reason to anticipate, but he also facilitated the search by lifting his shirt and turning out the waistband of his pants. Officer Roberts's

reliance on this gesture as a manifestation of Faulkner's continuing consent to the search was reasonable under all of the existing circumstances. *See id.* at 867.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** Although the prosecution made no showing that Faulkner was aware of his right to refuse to be searched when the search took place, this circumstance by itself is not determinative. As the court correctly observed, the State need not establish the defendant's knowledge of a right to refuse to be searched in order to establish a voluntary consent. *See State v. Fredette,* 411 A.2d at 69–70.

**3.** Faulkner nevertheless argues that *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), demands a higher level of scrutiny in this case because a search of his person was involved. Faulkner's reliance on *Schmerber* is misplaced. Unlike this case, *Schmerber* involved an intrusion "beyond the body's surface." *Id.* at 769, 86 S.Ct. at 1835.