2009 ME 125

**STATE of Maine**

v.

**Bradley SARGENT.**

Supreme Judicial Court of Maine.

Argued: Oct. 27, 2009.
Decided: Dec. 17, 2009.

Neale T. Adams, District Attorney, Todd R. Collins, Asst. Dist. Atty. (orally), Caribou, ME, for the State of Maine.

Francis E. Bemis, Esq. (orally), Bemis & Rossignol, LLC, Presque Isle, ME, Jason Dionne, Esq., Isaacson & Raymond, P.A., Lewiston, ME, for Bradley Sargent.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] The State of Maine appeals from an order entered in the Superior Court (Aroostook County, *Hunter, J.*) granting Bradley Sargent's motion to suppress evidence in the case brought against him for unlawful possession of scheduled drugs (Class C), 17–A M.R.S. § 1107–A(1)(B)(3) (2008). The court suppressed the evidence after holding that the search of a bag in the passenger compartment of Sargent's vehicle was unreasonable under the Fourth Amendment of the United States Constitution. The court held that Sargent's consent to search his vehicle did not reasonably extend to closed containers within it. Because we conclude that consent to search a vehicle does not in all cases extend to containers within it, and that under the objective circumstances of the consent in this case the trial court could conclude that the consent did not reasonably encompass the bag, we affirm the suppression judgment.

## I. FACTUAL BACKGROUND

[¶ 2] On September 10, 2007, Bradley Sargent was stopped in his car at a vehicle checkpoint on Route One in Presque Isle. The checkpoint was operated by officers from the Sheriff's Department and the Presque Isle Police Department; federal officers were also present, but were not directly participating in the stops.

[¶ 3] At the initial stop location, an officer observed that Sargent was not wearing his seatbelt and directed him to a secondary checkpoint area. At the secondary area, Sargent spoke with a deputy sheriff. The deputy told Sargent that the police were conducting a safety checkpoint, and then asked for his license, registration, and proof of insurance. The deputy used those documents to check with a dispatcher for any violations, and found none. After the dispatcher reported no problems, the dep-

uty returned the documentation to Sargent and told him that he was "all set." Then, before Sargent drove away, the deputy asked if he could search Sargent's vehicle.

[¶ 4] The deputy was unclear in his testimony regarding what he said to Sargent when requesting permission to search. He first testified that, to the best of his recollection, he asked Sargent if he could look inside the vehicle because he was concerned about illegal weapons and drugs. He later stated that he did not specifically recall what he said to Sargent, although when asking for permission to search he usually told people that it was for those purposes. On redirect the deputy repeated this uncertainty, first stating that it is "not uncommon" that he would tell suspects what he was looking for in a search *if* they ask, and then stating that he had spoken to Sargent about his purpose. Based on this testimony, the court found that the deputy had not informed Sargent of the object of the search, and the State does not dispute this finding on appeal.

[¶ 5] Sargent gave his consent to the search without any explicit limitations or authorizations. He stepped out of the vehicle and stood nearby while the deputy and another officer searched the car. During the search, the deputy found a small shaving-kit-style bag between the center console and the passenger seat. Without asking for any additional consent, he unzipped the bag and found a variety of pills inside. Most of the pills appeared to be vitamins or supplements, but four and one-half of the pills were white with star markings on them. The police had recently been informed that methamphetamine pills being trafficked from Canada had that appearance.

[¶ 6] Also during the search, the officers opened the closed center console in the rear of the car where they found several adult DVDs. After Sargent told the officers, in response to their question, that none of the DVDs showed underage actors, the officers replaced them in the console. The court found that Sargent was aware that the officers opened these two closed containers and did not express any objections at the time of the search.

[¶ 7] After the officers completed the search, Sargent was allowed to leave. He did not receive a citation for his seatbelt violation.

[¶ 8] Sargent moved to suppress the four and one-half pills at his trial, arguing that the search of the shaving kit violated the Fourth Amendment of the United States Constitution. He also initially argued against the legality of the roadblock, but withdrew that argument after additional discovery. The court granted the motion. The State appealed pursuant to 15 M.R.S. § 2115–A(1) (2008).

## II.  DISCUSSION

### A.  Standard of Review

[¶ 9] The court's factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo. *State v. Reynoso–Hernandez,* 2003 ME 19, ¶¶ 10, 11–12, 816 A.2d 826, 830. The government bears the burden of showing that sufficient consent was given, which is a question of fact. *State v. Koucoules,* 343 A.2d 860, 866 (Me.1974).

### B.  Legal Analysis

[¶ 10] The Fourth Amendment requires that all searches be reasonable. U.S. Const. amend. IV. Reasonableness "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). This generally requires a warrant and probable cause, but there are exceptions to that requirement, including when the defendant

consents to the search. *See Koucoules,* 343 A.2d at 866. Exceptions to the warrant requirement, including those based on consent, are construed narrowly, *see, e.g., Wyman v. James,* 400 U.S. 309, 341, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971), and "[t]he requirement of a warrant is waived only to the extent granted by the defendant in his consent," *Koucoules,* 343 A.2d at 866; *see also State v. Kremen,* 2000 ME 117, ¶ 10, 754 A.2d 964, 968 ("[A] search made pursuant to consent is limited to the bounds of that consent.").

[¶ 11] "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The Court asks if "in the light of the particular situation and with account taken of all the circumstances," a reasonable person would believe that some limitation was intended by the person giving the consent. *See Koucoules,* 343 A.2d at 867; *see also Robinette,* 519 U.S. at 39, 117 S.Ct. 417 ("In applying [the reasonableness] test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.").

[¶ 12] In *Jimeno,* like here, police searched a container within a suspect's vehicle and found illegal drugs. 500 U.S. at 249–50, 111 S.Ct. 1801. The *Jimeno* Court, however, placed particular emphasis on the fact that the police informed Jimeno that they wanted to search his car for drugs, finding that "[t]he scope of a search is generally defined by its expressed object," and the bag fell within the scope of consent because "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Id.* at 251, 111 S.Ct. 1801. The Court limited its holding, stating that *"if his consent would reasonably be under-*

*stood to extend to a particular container,* the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252, 111 S.Ct. 1801 (emphasis added).

[¶ 13] The decisions of the First Circuit are also consistent with a fact-specific approach. In a case where police searched a suspect's computer hard drive, the court found that the search had exceeded the scope of the suspect's consent, noting that the police had indicated to the suspect that they were looking for physical evidence of an assault, which he would not reasonably have expected them to search for on his computer. *United States v. Turner,* 169 F.3d 84, 88 (1st Cir.1999); *cf. United States v. Jones,* 523 F.3d 31, 39 (1st Cir. 2008) (finding that a suspect's consent extended to locations likely to contain drugs because, in the suspect's presence, the officers had already viewed and smelled marijuana in the motel suite). In *United States v. Zapata,* 18 F.3d 971 (1st Cir. 1994), although the court cited *Jimeno* as standing for the broad proposition that a general consent to search a vehicle includes containers within it, *id.* at 977, the circumstances of that case indicated that the consent extended to containers. Under the facts of *Zapata,* the suspect reasonably should have known that the officers were looking for contraband because the officers approached him in a restaurant and brought him outside to search his car, and he additionally claimed that he did not own the bags before they were searched. *Id.* at 973–74.

[¶ 14] Under the facts of this case as found by the court, the circumstances did not reasonably suggest consent by Sargent to search closed containers within his vehicle. Sargent was stopped at a motor vehicle safety checkpoint and sent to a secondary area because of a seatbelt violation. Sargent was not informed of the

object of the search before he consented. Under these circumstances, a reasonable person would have understood that the police intended, and Sargent agreed to, a search for further safety or possible traffic violations. Therefore, under the objective circumstances in this case, the court did not err in concluding that Sargent did not consent to a search of the shaving kit.

The entry is:

Judgment affirmed.