2010 ME 15

**STATE of Maine**

v.

**Jack D. BAILEY II.**

Supreme Judicial Court of Maine.

Argued: Nov. 10, 2009.

Decided: March 4, 2010.

F. David Walker IV, Esq. (orally), Rudman & Winchell, Bangor, ME, for Jack D. Bailey, II.

R. Christopher Almy, District Attorney, Susan J. Pope, Asst. Dist. Atty. (orally), Bangor, ME, for the State.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Jack D. Bailey II appeals from a judgment of conviction of ten counts of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(B) (2009); one count of sexual exploitation of a minor (Class B), 17 M.R.S.A. § 2922(1)(A) (Supp. 2003); and two counts of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2009), 17–A M.R.S.A. § 255(1)(C) (Supp. 2002), entered in the Superior Court (Penobscot County, *Anderson, J.*) following a bench trial.[1] Bailey argues that the court erred in denying his motion to suppress the evidence obtained from his home because: (1) he did not affirmatively consent to the search of his computer; (2) to the extent he did consent to any search, his consent was the result of deception and is therefore void; and (3) the officer exceeded the scope of any consent given in violation of the Fourth Amendment.

[¶ 2] Because we conclude that the search of Bailey's computer violated the Fourth Amendment, we vacate the judgment of conviction and remand for further proceedings to determine whether the evidence obtained as a result of that search must be suppressed as fruits of the illegal search.

## I. BACKGROUND

[¶ 3] Viewing the evidence in the light most favorable to the court's judgment, *see State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003, 1005, the record supports the following facts.

[¶ 4] On January 18, 2008, the Maine State Police Computer Crimes Unit contacted Detective Brent Beaulieu at the Bangor Police Department regarding the dissemination of child pornography via a peer-to-peer networking program[2] from an internet protocol (IP) address in Maine. This IP address had connected to a peer-to-peer network on both July 12, 2007, and December 12, 2007, and shared at least one video file authorities knew contained child pornography because of its unique hash value.[3] On both dates, the connections were identified by the same globally unique identifier (GUID), meaning that the

---

1. Although the convictions reflect the statutes in force at the time of the offenses, two counts of the indictment charged Bailey with violating statutes that were enacted subsequent to the alleged offenses. Count 11 of the indictment charged Bailey with sexual exploitation of a minor (Class B), 17–A M.R.S. § 282(1)(A) (2009), for a July 27, 2004, incident; section 282, however, was not in force until July 30, 2004. *See* P.L. 2003, ch. 711, § B–12 (effective July 30, 2004). Similarly, count 12 of the indictment charged Bailey with unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2009), for an incident that occurred in the summer of 2002; section 255–A, however, was not in force until January 31, 2003. *See* P.L. 2001, ch. 383, § 23 (effective Jan. 31, 2003).

2. A peer-to-peer network is designed to facilitate the sharing of electronic files between participating members over the Internet. To join a network, an individual downloads and installs the networking software onto her computer, and designates files she wishes to share with other members on the network. The files remain on the individual computer, but users logged into the network can access and copy one another's files. *See United States v. Lewis*, 554 F.3d 208, 211 (1st Cir. 2009) (discussing and explaining the functions and capabilities of LimeWire).

3. A hash value is a unique identifier for electronic files that is generated through a mathematical algorithm. Only identical electronic files have the same hash value.

same target computer used the same internet access point on both dates. The State Police ascertained through a subpoena of Time Warner RoadRunner that the IP address in question was assigned to a residential internet service subscriber in a Bangor neighborhood.

[¶ 5] Beaulieu obtained a search warrant for the residence and executed it on January 30, 2008. The officers did not discover either the target computer or any child pornography during the execution of the warrant; instead, they determined that the IP address sharing the files was associated with an unsecured wireless router located at that residence. In other words, someone within range of the router was using it to access a peer-to-peer network and disseminate the files in question. After the search, Beaulieu turned off the wireless router at the residence.

[¶ 6] On February 1, 2008, Beaulieu began canvassing neighborhood homes in range of the router in order to discover the target computer. In the course of his investigation, the detective knocked on Bailey's door. Beaulieu was in plain clothes and arrived in an unmarked car, but identified himself as a member of the police department. Beaulieu recorded the exchange with Bailey with a digital recording device in his pocket, without Bailey's knowledge.

[¶ 7] After Bailey allowed him into the apartment, Beaulieu stated that he was "checking the neighborhood, [because] there's been a problem in the neighborhood with people gaining access to someone else's computer and [he] just want[ed] to make sure that [Bailey didn't] have the same issue." Beaulieu asked if he could

"look at [Bailey's computer] real quick just to make sure [Bailey didn't] have the same issue." Bailey led him to the computer and manipulated the keyboard to "wake up" the computer. Beaulieu then sat in front of the computer while Bailey stood behind him, observing what he was doing. Bailey asked several questions about what Beaulieu was looking for on his computer. Each time, Beaulieu responded that he was searching for a file that would indicate Bailey had an "issue," and explained that the "issue" was whether anyone had accessed Bailey's computer.

[¶ 8] The detective saw a LimeWire icon on the desktop of the computer, but was unable to match the GUID number on Bailey's computer to the GUID number of the target computer. Because he knew that a reinstallation would account for a different GUID number, Beaulieu asked Bailey if he had ever reinstalled the LimeWire software; Bailey said he had done so one or two months earlier. Bailey also told Beaulieu that he had been accessing the Internet through a wireless connection, and that the connection had stopped working two days earlier.

[¶ 9] Without further discussion, Beaulieu then searched the computer for video files containing child pornography by running a general search for a type of file called audiovisual interleave (AVI).[4] Beaulieu accomplished this by typing the file extension ".avi" into the computer's search function. The search revealed four AVI files that appeared to contain child pornography; Beaulieu recognized them by the thumbnail screenshots and file names. Beaulieu did not open the files, or search the computer any further.[5]

---

4. The detective testified at the motion hearing that he was not concerned about searching for one of the specific files he knew had been shared through the target computer, because

those files could have been deleted by the time of his search.

5. It was later determined that these files were located in the shared LimeWire folder on

[¶ 10] Beaulieu started to question Bailey about the AVI files. In response to those questions, Bailey acknowledged that he had a "problem" involving child pornography and then, at Beaulieu's request, orally consented to a search of his apartment; Bailey later signed a consent-to-search form. During the search, Beaulieu found seven eight-millimeter tapes, which Bailey allowed the detective to take. Bailey was not arrested at the end of the encounter.

[¶ 11] After reviewing the tapes, Beaulieu discovered that one of them contained a homemade video depicting two young girls talking to the camera operator named Jack; one of the girls repeatedly exposed herself to the camera. Beaulieu was later able to identify the two girls and determine that the video had been created in the attic of Bailey's former residence. One of the girls told Beaulieu that she had spent the night at Bailey's residence every other weekend for over a year, and that Bailey had sexual intercourse with her at each of those times. The other girl reported that Bailey had also touched her in a sexual manner. Both girls were under the age of fourteen at the time of these events.

[¶ 12] Bailey was arrested and a grand jury returned an indictment that charged him with ten counts of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(B); one count of sexual exploitation of a minor (Class B), 17–A M.R.S. § 282(1)(A) (2009); and two counts of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E).

[¶ 13] Bailey moved to suppress all the evidence obtained as a result of the February 1, 2008, search of his computer and apartment on the same grounds as presented in this appeal. After a hearing, the court denied Bailey's motion. The court found that Bailey consented to the search of his computer through nonverbal conduct when he led Beaulieu to his computer and manipulated the keyboard to illuminate the screen. In determining whether Bailey's consent to search his computer was the result of deceit or trickery and therefore void, the court focused on the officer's initial representation and on the meaning of the word "issue." The court found that Beaulieu was intentionally ambiguous in his use of the word "issue,"[6] and applied a subjective and objective analysis to determine the effect of the ambiguity:

> [I]t is more likely than not that [Bailey] reasonably interpreted the detective's comments to mean he was checking to see if [Bailey] was accessing another person's wireless router. Subjectively, [Bailey] knew that he had been accessing his neighbor's wireless without permission, which makes it likely that he construed the detective's comments as referring to such activity. Objectively, anyone such as [Bailey], who did not have a wireless router and who was confronted by the "issue" of someone accessing another's computer, could only reasonably conclude that he was the one doing the accessing.

The court concluded that Bailey's consent to search his computer was valid because Bailey "knew it was probable he was being investigated for accessing his neighbor's wireless router without permission" when he consented, and therefore Beaulieu did

---

Bailey's computer.

6. Beaulieu testified at the hearing that the issue in the neighborhood that he was investigating was not a problem with someone accessing the Internet through a neighbor's wireless router. The detective explained that the issue he was investigating was "someone in that neighborhood providing … child pornography for downloading," and that his basic interest was to find videos containing child pornography.

not affirmatively misrepresent his purpose prior to procuring Bailey's consent.

[¶ 14] The suppression court did not make a specific finding as to the scope of Bailey's consent, but relied on its deception analysis to conclude that the detective's search of the computer did not exceed the scope of the consent that Bailey gave. Because the court found that the scope of his consent was not exceeded, it did not reach Bailey's fruits of the poisonous tree argument or his argument concerning the consensual search conducted after the alleged Fourth Amendment violation.

[¶ 15] During a jury-waived trial, the parties entered stipulations to the content but not the truth of the testimony of the two minors.[7] In addition, a copy of the eight-millimeter film was admitted over Bailey's objection. After considering this evidence, as well as testimony from Beaulieu, the court found Bailey guilty on all thirteen counts. The court sentenced Bailey to twenty years in prison, suspended all but ten years, and imposed six years of probation. Bailey timely appealed pursuant to 15 M.R.S. § 2115 (2009) and M.R.App. P. 2.

## II. DISCUSSION

### A. Standard of Review

[¶ 16] "[W]e review the factual findings of the motion court to determine whether those findings are supported by the record," and will only set aside those findings if they are clearly erroneous.

State v. Reynoso–Hernandez, 2003 ME 19, ¶ 10, 816 A.2d 826, 830. "In contrast, a challenge to the application of those facts to constitutional protections is a matter of law that we review de novo," id. ¶ 11, 816 A.2d at 830, and a ruling on a motion to suppress based on essentially undisputed facts is viewed as a legal conclusion that is reviewed de novo, see State v. Tozier, 2006 ME 105, ¶ 6, 905 A.2d 836, 838.

### B. Standing

[¶ 17] The State has argued that, because some of the AVI files located by Beaulieu were found in a shared LimeWire folder, Bailey cannot argue that he had any Fourth Amendment rights in those files. The State contends that Bailey forfeited his right to privacy by making these files available to anyone on the LimeWire network. There is case law to support the position that law enforcement officers do not violate the Fourth Amendment by using peer-to-peer software to remotely access shared files contained on a defendant's computer because the defendant has no reasonable expectation of privacy in the remote accessing of files he has made available to other users on the peer-to-peer network. See United States v. Ganoe, 538 F.3d 1117, 1127 (9th Cir.2008) (affirming there was no illegal warrantless search when law enforcement agents used LimeWire to access child pornography files on the defendant's computer because the defendant lacked a reasonable expectation of privacy in those files); cf. United States v. Perrine, 518 F.3d 1196, 1205

---

7. Bailey contended that the identities and testimony of the minor girls were fruits of the poisonous tree because they were only discovered as a result of the illegal search of Bailey's residence. The State contended that the identities and testimony were not fruits of the poisonous tree, and that the victims would be available to testify even if the suppression judgment was overturned. Bailey maintained an objection on the stipulated testimony and the admission of the eight-millimeter tape as fruits of the poisonous tree in order to appeal the suppression issue. Given the unusual circumstances of the trial proceedings, the court engaged in a colloquy with Bailey to ensure that he understood the proceedings and the rights he was foregoing.

(10th Cir.2008) (concluding that a defendant who utilized peer-to-peer software so as to allow other users to access at least certain folders in his computer had no reasonable expectation of privacy in the subscriber information given to his internet provider). As the Court of Appeals for the Eighth Circuit noted: "One who gives his house keys to all of his friends who request them should not be surprised should some of them open the door without knocking." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir.2009) (holding that an agent's use of file-sharing program to access child pornography files on the defendant's computer did not constitute an illegal warrantless search because the defendant had made those files accessible to others and thus lacked any reasonable expectation of privacy in files).

[¶ 18] This argument might have been effective if Bailey were challenging the detective's use of peer-to-peer software to remotely access Bailey's shared files, but that is not the situation here. Detective Beaulieu did not use the technology available to remotely determine that it was Bailey who had used a peer-to-peer network to download child pornography. Instead, Beaulieu shut down Bailey's access to the Internet by turning off his neighbor's wireless router, then manually accessed and searched Bailey's computer. Because Bailey has a reasonable expectation of privacy in his computer and its contents when it is not being accessed through the peer-to-peer network, *see Ganoe*, 538 F.3d at 1127, he has standing to challenge the detective's search of the computer.

C. Voluntariness of Consent to Search: Verbal Response

■■■■ [¶ 19] Bailey first contends that he did not consent at all to the search of his computer because he made no verbal reply to Beaulieu's request. We review a finding of voluntary consent for clear error. *State v. Kremen*, 2000 ME 117, ¶ 7, 754 A.2d 964, 967; *State v. Koucoules*, 343 A.2d 860, 873 (Me.1974). The State has · the "burden of demonstrating by a preponderance of the evidence that an objective manifestation of consent was given by word or gesture by one bearing an appropriate relationship to the property searched." *State v. Fredette*, 411 A.2d 65, 68 (Me.1979) (citations omitted). Although an individual may not express her consent to a search in spoken or written words, her actions are still capable of manifesting her consent to the search. *See State v. Cress*, 576 A.2d 1366, 1367 (Me.1990) (affirming that the defendant consented to the search by assisting and cooperating with the authorities, despite not consenting to the search either orally or in writing).

[¶ 20] The record amply supports the suppression court's determination that Bailey consented to the initial search of his computer through his actions. Although he did not utter or write any words of consent at that point in the encounter, Bailey resided at the house, stated that the computer belonged to him, and clearly manifested his consent to the search of his computer by leading the detective to and assisting the detective in waking up the computer. The court did not clearly err in finding that Bailey's actions constituted an expression of consent.

D. Voluntariness of Consent to Search: Deception

■■ [¶ 21] Bailey next contends that any consent he may have given is void because it was induced by Beaulieu's deceit and misrepresentation. He contends that the detective misrepresented the purpose of his investigation; although Beaulieu claimed he was investigating a problem in the neighborhood of people gaining

access to others' computers, he was actually investigating the dissemination of child pornography. Bailey argues that had he known the true purpose of the search, he would not have consented.

 [¶ 22] "The burden of proof for justifying the lawfulness of a search upon consent lies on the State which, to satisfy the same, must prove that the consent was, in fact, freely and voluntarily given." *State v. Barlow*, 320 A.2d 895, 901 (Me. 1974). Consent to search can be invalidated if the officer obtained the consent by use of misrepresentation or deceit. *See id.* at 900 ("[A] consent search is unreasonable under the Fourth Amendment if the consent was induced by deceit, trickery or misrepresentation of the officials making the search.").

[¶ 23] We have recognized the "practical necessity for the use of deception in criminal investigations," *State v. Carey*, 417 A.2d 979, 981 (Me.1980), but the effect of deception as to purpose is an issue of first impression.[8] Case law from federal and other state jurisdictions on the effect of deception is necessarily fact driven, but in cases where courts have found that de-

ception alone vitiates consent, there has been an express and affirmative misrepresentation by the authorities as to the purpose of the search or investigation.[9] Most frequently, police deception as to purpose is viewed among all of the circumstances surrounding the individual's consent in a voluntariness analysis. *See United States v. Carter*, 884 F.2d 368, 375 (8th Cir.1989) (noting that deception is one relevant inquiry within the totality of the circumstances); *United States v. Romero*, No. 05–10080–01–WEB, 2005 U.S. Dist. Lexis 26000, at *11–*16 (D.Kan. Oct. 19, 2005) (analyzing the voluntariness of a consensual search by considering deception along with other factors including custody, language barrier, force, and coercion); *Commonwealth v. Gaynor*, 443 Mass. 245, 820 N.E.2d 233, 242 (2005) (stating that deception as to purpose is one factor to consider in the totality of the circumstances).

 [¶ 24] As with other factors bearing on voluntariness, whether a misrepresentation of the purpose of a search by the police invalidates consent is a question of fact based on the totality of the

---

8. We have addressed in several cases the effect of police deception in contexts different than that presented here. For example, in *State v. Barlow* we held that consent that resulted from submitting to an officer's false claim of lawful authority to search regardless of a warrant is constitutionally impermissible. 320 A.2d 895, 900 (Me.1974); *cf. Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (holding that a consent to search that is given only after an official falsely asserts possession of a search warrant is unconstitutional). When confronted with undercover agents gaining entry to a private home in *State v. Carey*, we held that the concealment or misrepresentation of their identity does not violate the Fourth Amendment "so long as the entry is for the very purposes contemplated by the occupant." 417 A.2d 979, 981–82 (Me.1980) (quotation marks omitted).

9. *See Graves v. Beto*, 424 F.2d 524, 524–25 (5th Cir.1970) (affirming that a defendant's consent to test his blood solely for its blood-alcohol level was inadequate to justify the warrantless search because the officer's true purpose and the only test performed was a blood type test to match the defendant's blood to evidence from a rape scene); *cf. United States v. Peters*, 153 F.3d 445, 451 (7th Cir. 1998) (noting that consensual searches for criminal investigations under the guise of a civil tax audit are unreasonable under the Fourth Amendment when the agents affirmatively misrepresent their true purpose and the misrepresentation is a material factor in the defendant's decision to cooperate); *see generally* 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.2(n), 133–41 (4th ed. 2004 & Supp. 2009) (discussing the effect of deception on consensual searches).

circumstances. *See Schneckloth v. Busta-monte,* 412 U.S. 218, 229, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Faulkner,* 586 A.2d 1246, 1247 (Me.1991); *Koucoules,* 343 A.2d at 873. The record contains these facts bearing on the voluntariness of Bailey's consent: the officer clearly identified himself and indicated he was investigating some sort of computer "issue"; Bailey allowed the officer to enter his home; the officer asked for and received permission to search the computer; Bailey was neither in custody during the encounter, nor arrested at the end of the encounter; and Bailey was present for the entire duration of the computer search. In light of all these circumstances, as well as the suppression court's finding that Beaulieu's statements, though ambiguous, were not affirmatively misleading, the court did not clearly err in determining that Bailey voluntarily consented to the search of his computer. *See Cress,* 576 A.2d at 1367.

### E. Scope of Consent

[¶ 25] Bailey finally contends that the court applied the improper standard for determining the scope of his consent and erred in finding that Beaulieu's search did not exceed the scope of Bailey's consent. We agree.

[¶ 26] Consent is a firmly established exception to the warrant requirement of the Fourth Amendment, *see Florida v. Jimeno,* 500 U.S. 248, 250–51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), but the "requirement of a warrant is waived only to the extent granted by the defendant in his consent," *Koucoules,* 343 A.2d at 866;

see also *State v. Sargent,* 2009 ME 125, ¶ 10, 984 A.2d 831, 834 ("Exceptions to the warrant requirement, including those based on consent, are construed narrowly ...."). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801 (quotation marks omitted); *see Sargent,* 2009 ME 125, ¶¶ 11–14, 984 A.2d at 834–35 (considering the totality of the circumstances surrounding the defendant's consent when examining objective reasonableness in a scope of consent analysis). What a suspect or an officer subjectively believes to be the scope of consent is irrelevant. *See United States v. Sanders,* 424 F.3d 768, 775 (8th Cir.2005); *cf. Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (foreclosing the possibility that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *State v. Johnson,* 2009 ME 6, ¶ 22, 962 A.2d 973, 981 (concluding that "the subjective motivations of the inspectors are not relevant" to the constitutionality of a warrantless administrative inspection).

[¶ 27] Although the standard to be applied by the trial court when considering the scope of a suspect's consent is one of objective reasonableness, we have not yet determined the appropriate standard of review to be applied to a trial court's determination of this issue.[10] *See Sargent,*

---

10. The United States Supreme Court has also not yet addressed this issue, and the federal circuits are split. *Compare United States v. Stewart,* 93 F.3d 189, 192 (5th Cir.1996) (stating that "[t]he standard for measuring the scope of the suspect's consent is objective reasonableness" and "[o]bjective reasonableness is a question of law reviewed de novo"),

with *United States v. Long,* 425 F.3d 482, 486 (7th Cir.2005) ("[W]hether the search remained within the boundaries of the [scope of] consent is a question of fact to be determined from the totality of all the circumstances." (quotation marks omitted)), *United States v. Garrido-Santana,* 360 F.3d 565, 570 (6th Cir.2004) ("The district court's determi-

2009 ME 125, ¶¶ 10–11, 984 A.2d at 833–34. Consistent with our analysis in *Sargent*, we need not decide the appropriate standard of review because we would vacate Bailey's conviction under either clear error or de novo review. *See id.; see also United States v. Jones*, 523 F.3d 31, 38–39 (1st Cir.2008) (applying the "objective reasonableness" standard to a scope of consent analysis, but not stating whether the review was de novo or for clear error because the court would have affirmed under either standard).

[¶ 28] The suppression court concluded that "[a]t the time [Bailey] consented, [he] knew that it was highly probable that the detective wanted to look at his computer to see if he had accessed his neighbor's wireless router" by considering the dialogue between Bailey and Beaulieu, Bailey's subjective knowledge "that he had been accessing his neighbor's wireless router without permission," and the fact that Bailey did not have his own wireless router. The consideration of subjective factors in determining the scope of Bailey's consent was error under the objective reasonableness standard. *See Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *Sanders*, 424 F.3d at 775. Here, pursuant to the objective reasonableness standard, Beaulieu's search exceeded the scope of Bailey's consent. A reasonable person observing the exchange would have concluded that Bailey was consenting to a search for the purpose indicated by Beaulieu: to see if someone had been accessing his computer without his permission. *See Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801 ("The scope of a search is generally defined by its express object."). The officer clearly exceeded that scope when he ran a general search for *all* of the video files on Bailey's computer. *See*

*Koucoules*, 343 A.2d at 868 ("Where permission has been given to search for a particular object, the ensuing search remains valid as long as its scope is consistent with an effort to locate that object."). Beaulieu's search was not consistent with his stated purpose, and for that reason the detective's search for AVI files violated Bailey's Fourth Amendment rights.

F. Fruits of the Poisonous Tree

[¶ 29] Although we hold that the search of Bailey's computer violated the Fourth Amendment and, on that basis, vacate Bailey's conviction, we remand the case to the Superior Court for further proceedings. Bailey's motion to suppress and its supporting memorandum asserted that, if the initial search of Bailey's computer was unlawful, Bailey's subsequent oral and written consent to search both the computer and his home should be disregarded and all the subsequently discovered evidence should be suppressed. At the hearing on Bailey's suppression motion, however, the parties and the court agreed to limit the issue considered to a determination of whether Detective Beaulieu's initial search of Bailey's computer was lawful. The parties agreed at that time that, should the trial court rule in Bailey's favor, the issue concerning the evidence obtained from subsequently obtained witnesses would be taken up in a subsequent hearing. With the issue of Bailey's initial consent now resolved, on remand, the court must consider the remainder of Bailey's motion to suppress.

III. CONCLUSION

[¶ 30] We vacate the judgment of conviction and remand the case to the Superi-

---

nation of whether a search exceeded the scope of consent is a question of fact that we review for clear error."), and *United States v.*

*Martel–Martines*, 988 F.2d 855, 858 (8th Cir. 1993) (applying clear error review to a scope of consent determination).

or Court for a hearing on the balance of Bailey's motion.

The entry is:

Judgment of conviction vacated. Remanded for further proceedings consistent with this opinion.