STATE OF MAINE                    SUPERIOR COURT
WALDO, SS.                        DOCKET NO. CR-17-47


STATE OF MAINE          )
                        )
                        )          ORDER REGARDING
        v.              )          MOTIONS TO SUPPRESS
                        )
                        )
                        )
MIRANDA HOPKINS         )


The defendant filed two motions to suppress evidence associated with numerous interviews of the defendant, as well as evidence obtained as a result of searches conducted by various law enforcement officers. A hearing on the defendant's motions was held before the court on August 31, 2017. Subsequent to the hearing, the parties submitted written arguments for the court's further consideration.


   1. Motions to Suppress Statements of Defendant

At the hearing on the defendant's Motion to Suppress Evidence of the Defendant's Statements, the defendant identified eight different interviews[1] during which she claims statements were made which should be excluded as evidence at any trial. As to the various interviews, the defendant contends, alternatively, that the interviews constituted custodial interrogations during which no Miranda warnings were provided, or an invalid waiver of Miranda

---

[1] The Defendant's initial written Motion to Suppress identified more than the eight interviews, but the Defendant waived her challenge to the additional statements at the time of the hearing.

1

rights was obtained; or that the statements provided by the defendant were not voluntary. The specific interviews at issue include the following:

-- The January 12, 2017 initial interview with Casey MacDonald;
-- the January 12, 2017 interview with Jason Richards;
-- the second interview with Casey McDonald on January 12, 2017;
-- the January 12, 2017 interview during the "walk through";
-- the January 12, 2017 interview with Jason Andrews at 7:30 AM;
-- the January 12, 2017 interview with Jason Andrews at 6 PM;
-- the January 13, 2017 interview with Jason Andrews and Abbe Chabot;
-- the January 15, 2017 interview with Jason Andrews at the jail.

Various recordings and transcripts of the interviews described above were admitted into evidence at the hearing. The court has reviewed those exhibits subsequent to the hearing.

The Law Court has frequently addressed the legal principles raised by the defendants pending motion to suppress the defendant's various statements. The law requires that a person who is interrogated by police officers while that person is "in custody" is entitled to a Miranda warning prior to questioning. One is "in custody" when there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. The Law Court has identified a number of factors which should be considered in determining whether a reasonable person would have felt that they were "in custody."

2

If a person is "in custody" the State has the burden of proving that any statements obtained were subsequent to a knowing, intelligent and voluntary waiver of Miranda rights. In any subsequent interview of the defendant, whether a defendant must be re-informed of her Miranda rights depends upon a number of objective factors including the time lapse between the last Miranda warnings and the defendant's statements, whether there was a change of location between the place where the last Miranda warning was given and the place of the defendant's later statements, whether the same officer gave the warning also conducted the later interrogation, and whether the statement elicited at the later interrogation differed significantly from other statements which had been preceded by the Miranda warnings. *State v. Myers, 345 A.2d 500 (Me. 1975).*

Apart from the Miranda related obligations, the Law Court has frequently addressed the requirement that any confession be admissible only if it is voluntary. "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all the circumstances its admission would be fundamentally fair." *State v. Coombs, 1998 ME 1 at ¶ 10.* The State bears the burden of proving voluntariness by a standard of proof beyond a reasonable doubt.

In assessing voluntariness, the Law Court has identified a number of factors to consider, including the duration of the interrogation, the location of the interrogation, whether the interrogation was custodial, the recitation of Miranda warnings, the number of officers involved, the persistence of the officers, police trickery, threats, promises or inducements made to the

3

defendant, and the defendant's age, physical and mental health, emotional stability and conduct. *State v. Sawyer, 2001 ME 88.*

This court has applied these legal principles in its review of each of the various interviews of the defendant identified above. With respect to each interview, and the statements obtained from such interviews the court concludes as follows:

1) the Casey MacDonald initial interview

No Miranda warnings were provided to the defendant by Deputy MacDonald prior to this interview. However the court concludes that the interrogation of the defendant by Deputy MacDonald was not a "custodial" interrogation. Deputy MacDonald was responding to a 911 call initiated by the defendant at the defendant's home. The interview occurred mostly in the kitchen area of the defendant's home. Although there were instances when the defendant was crying during the interview, for the most part the defendant was not crying and was coherent and understandable. Deputy MacDonald was the only police officer involved during this initial interview. At no time did the defendant indicate she wanted to leave or that she did not want to answer questions. Deputy MacDonald's questions were undertaken in a calm tone and the responses provided by the defendant were given in a similar manner.

The court concludes that this interview was a non-custodial interrogation which did not require formal Miranda warnings. The court also concludes that the statements provided by the defendant were voluntary.

4

2) the January 12, 2017 Jason Richards interview

The Richards interview also occurred in the defendant's home in the early morning hours of January 12, 2017. Detective Richards orally informed the defendant of her Miranda rights, and also provided her a written Miranda consent form which she signed. (States Exhibit 3). The court concludes that the defendant's waiver of her Miranda rights was valid. The subsequent interview was conducted by the police in a conversational and calm tone. The court also concludes that the statements provided by the defendant, although clearly subsequent to a traumatic event, were voluntary. The mere fact that the defendant was, at times, crying, and for a brief period, denied the opportunity to smoke a cigarette, does not change the court's conclusion that her statements were voluntarily made.

3) the second interview with Deputy MacDonald

Almost immediately after the conclusion of Detective Richards interview, Deputy MacDonald rejoined the defendant in her home. Deputy MacDonald and the defendant continued to discuss various issues during this second interview. Deputy MacDonald did not provide the defendant with a new Miranda warning at this time. During the course of this interview, the defendant was allowed to smoke, and also went about various domestic duties including laundry and making popcorn for one of her children.

The court concludes that no new Miranda warning was required at this juncture. Moreover, the court also concludes that the statements which were made by the defendant during this interview were also voluntary.

4) the interview during the "walk-through"

The walk through video and interview with the defendant occurred at the defendant's home approximately three hours after Detective Richards had formally provided the defendant with her Miranda warnings. The walk-through was conducted by Detective Jason Andrews. Miranda warnings were not reread to the defendant prior to the walk-through. The defendant consented to participating in the walk-through of the scene and responding to the questions posed during that walk-through.

Although the walk-through and associated interview was conducted by a different state police officer, the court concludes that new Miranda warnings were not required. The court also concludes that the statements made by the defendant, which were in response to the officer's calm and nonconfrontational inquiries, were voluntary.

5) 7:30 AM interview with Detective Andrews

At approximately 7:30 AM on the morning of January 12, 2017, Detective Andrews conducted an interview with the defendant outside the defendant's home in the detectives police cruiser. Although no new formal Miranda warning was provided, Detective Andrews did address Miranda with the defendant by telling her that all the Miranda rights which had previously

6

been explained to her still apply, and specifically asking her if she needed the officer to go over those again with her. The defendant declined that offer.

The subsequent interview which lasted approximately three hours adopted a conversational low key tone throughout. The defendant was provided an opportunity for at least one smoke break during the course of the interview. The defendant was also specifically told she was not under arrest, and at the conclusion of the interview was not placed under arrest.

The court concludes that no new Miranda warnings were required under the circumstances. The court also concludes that the statements provided to the defendant were voluntary.

6) 6 PM interview with Detective Andrews on January 12, 2017

This interview with the defendant was conducted in Detective Andrews police cruiser outside the defendant's home. The interview lasted approximately two hours. Detective Anders provided the defendant with a formal Miranda warning at the outset of the interview. The court concludes that the defendant validly waived her Miranda rights and proceeded to answer the detective's questions.

During the first approximately two thirds of the interview, the defendant was voluntarily providing answers to the detective's questions. As the interview continued to proceed however, the defendant's own physical condition continued to worsen. She became more frequently upset and crying. Beginning at page 43 of the transcript of the interview, the defendant

7

specifically noted, "I'm going to kill myself" and stated she was exhausted. Soon thereafter she noted that, "my brain is like warped. It's been a hell of a day since before 2:00 this morning, I'm sorry. And I'm. . . I'm just at a loss." The defendant went on to state, "I feel like I'm going to faint." She repeated a few times "I really don't feel well" and expressed her concern that her "blood sugars are probably really low."

Given the defendant's worsening conditions, the court concludes that any statements made by her after page 43 of the transcript at State's Exhibit 6b were not voluntary given the defendant's deteriorating physical and mental health, and emotional stability at the time.

7) January 13, 2017 interview with Detectives Andrews and Chabot

At approximately 6:45 PM on the evening of January 13, 2017, Detectives Andrews and Chabot conducted an interview with the defendant at the home of the defendant's father. The defendant's father and brother were also present, and frequently participated, throughout the duration of the interview. Detective Andrews provided formal Miranda warnings to the defendant at the outset of the interview. The defendant had a rather lengthy discussion with her father regarding her Miranda rights, and sought his input on how to proceed. The court concludes that the defendant subsequently validly waived her Miranda rights.

Although this interview involved two police officers, and the nature of their questioning became more persistent as the interview proceeded, the court concludes that the statements provided by the defendant were, nonetheless,

8

voluntary. Toward the conclusion of the interview, the defendant expressed a desire to get some sleep and complete the interview the next day. Once she did so, the officers terminating the interview and immediately proceeded to place her under arrest. The court concludes that any statements made after that point in time by the defendant were not voluntary and would not be admissible.

8) the January 15, 2017 jail interview with Detective Andrews

In response to a request made by the defendant communicated through her father, Detective Andrews went to the jail to again meet with the defendant. At the outset of their meeting at the jail, which was held prior to the defendant's initial appearance before the court, Detective Andrews formally again read the defendant her Miranda rights. Again, the court concludes the defendant validly waived her Miranda rights at this time.

Detective Andrews and the defendant met for approximately one hour during which time the defendant provided statements to the detective and responded to his further questioning. Given the totality of circumstances, the court concludes that those statements provided by the defendant were voluntary.

Accordingly, except as expressly noted above, the defendant's Motion to Suppress Evidence of Statements Made by the Defendant is hereby, DENIED.

9

## 2. Motion to Suppress Evidence From Searches

The defendant filed a separate motion to suppress focusing on the evidence obtained by the police in response to various searches they conducted. Specifically, the police conducted the following searches which are now the subject of the defendant's motion:

-- The January 12, 2017 "search by consent" of the defendant's home;
-- the January 13, 2017 search warrant regarding the defendant's residence, vehicles and outbuildings;
-- the January 13, 2017 search warrant regarding Verizon records; and
-- the January 23, 2017 search warrant regarding Joseph Gathercole's tablet.

The 4th and 14th Amendments to the Constitution guarantee that a citizen's home will be free from arbitrary intrusion by the police. Entry into one's home without a warrant is prohibited unless justified under one of the exceptions recognized in law. "A search conducted pursuant to a valid consent is an exception to the warrant requirement." *State v. Cresss, 576 A.2d 1366, 1367 (Me. 1990), state v. Sargent, 2009 ME 125.*

In the early morning hours of January 12, 2017, during an interview with Detective Jason Richards in the defendant's home, the State Police requested permission to search the defendants home. During the course of that discussion, the defendant provided her verbal consent for the police to search her home. In addition, the defendant reviewed and signed a written "Consent to Search" form. (States Exhibit 4).

10

The court concludes that the defendant's consent provided on January 12, 2017 was a knowing and voluntary consent, and thus a valid exception to the requirement for a warrant on that occasion.

The next day, on January 13, 2017, the State Police presented an application for a search warrant to the court seeking further authorization to search the defendant's residence, vehicle and outbuilding located at the defendant's premises at 211 N. Dixmont Rd. in Troy, Maine. The District Court issued the requested search warrant on January 13, 2017.

"A [search] warrant application must demonstrate probable cause to believe (1) a crime has been committed .... and (2) enumerated evidence of the offense will be found at the place to be searched..." *United States v. Feliz 182 F.3d 82,86 (1st Cir. 1999).* In reviewing the four corners of the affidavit submitted in this case, the court concludes that there was probable cause to establish that a crime had been committed within the defendant's residence. The District Court was justified in issuing a search warrant focused on the search of the defendant's residence. The court is persuaded, however, that there was no nexus between the evidence as outlined in the affidavit in support of the search warrant application, and any of the defendant's outbuildings or vehicles located on the premises at 211 N. Dixmont Road.

Accordingly, the court will grant the defendant's motion to suppress any evidence associated with a search of the defendant's out-building or vehicles which relied upon the issuance of the January 13, 2017 search warrant as a basis for doing so.

11

The defendant also challenges the issuance of a search warrant on January 13, 2017 seeking Verizon wireless business records in conjunction with a cell phone of the defendant. Upon review of the affidavit filed in support of the requested search warrant (States Exhibit 9) this court is persuaded that there was sufficient probable cause to support the search of the cell phone seized and the narrowly requested documentation regarding that cell phone from the Verizon wireless provider.

Finally, the defendant's motion challenges the issuance of the January 23, 2017 search warrant authorizing a search of the RCA Tablet seized from Joseph Gathercole on January 17, 2017. The court has reviewed the affidavit in support of the search warrant application. The affidavit describes video on the tablet depicting an encounter or altercation between the defendant and her children sometime after Christmas 2016 and before January 12, 2017.

This court concludes that there was sufficient probable cause to support the issuance of the warrant associated with the evidence on the seized tablet.

Accordingly, the motion to suppress, except as specifically noted above is hereby DENIED.

Date: 10/17/17

_____
SUPERIOR COURT JUSTICE

12