JABAR, J., dissenting.
[¶ 47] I agree with Justice Gorman's analysis, but I write separately because I do not believe her dissent goes far enough. I agree that LeMeunier-Fitzgerald's consent to the blood test, obtained under what amounted to the threat of an enhanced criminal penalty, was coerced and involuntary as a matter of law. Gorman, J., Dissenting Opinion ¶¶ 42, 45. However, I have additional serious concerns with the State's implied consent form, which informs drivers (1) that there exists a "duty" to submit to a blood test, and (2) that evidence of refusal will be admissible in evidence at trial against the accused driver. These two representations within the form-and read to LeMeunier-Fitzgerald-constitute misrepresentations of the law.
A. Duty to Submit to a Blood Test
[¶ 48] In this case, the police officer used Maine's implied consent form to advise LeMeunier-Fitzgerald of her duty to submit to a blood test for the purpose of determining her blood alcohol level. The Court, however, addresses only a portion of the implied consent form that the officer read to the defendant. Court's Opinion ¶ 4. The police officer also read the following portion of the form to LeMeunier-Fitzgerald:
By operating or attempting to operate a motor vehicle in this State[,] you have a *199 duty to submit to and complete chemical tests to determine your alcohol level and drug concentration.
[¶ 49] This language in the form, which pre-dated Birchfield , applied to "chemical tests": both breath and blood tests. Birchfield changed everything with regard to blood tests-and Maine's implied consent form should no longer state that defendants have a "duty" to submit to a blood test. See Birchfield v. North Dakota , 579 U.S. ----, 136 S.Ct. 2160, 2185, 195 L.Ed.2d 560 (2016) (concluding "that a breath test, but not a blood test , may be administered as a search incident to a lawful arrest for drunk driving") (emphasis added). Birchfield now requires law enforcement to obtain a search warrant to extract blood from a defendant for purposes of a blood test to determine the alcohol level of the defendant. Id. at 2184.
[¶ 50] The United States Supreme Court and this Court have recognized exceptions to the warrant requirement. See, e.g. , Kentucky v. King , 563 U.S. 452, 459, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ; State v. Boyd , 2017 ME 36, ¶ 8, 156 A.3d 748. Consent by the defendant is a well-recognized exception to the need for search warrants. See, e.g. , Schneckloth v. Bustamonte , 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The pivotal issue in this case is whether LeMeunier-Fitzgerald voluntarily gave her consent to the taking of her blood. There is a great deal of jurisprudence setting out how we evaluate whether a defendant has voluntarily consented to a warrantless search. See, e.g. , State v. Nadeau , 2010 ME 71, ¶¶ 17, 56, 1 A.3d 445 ; State v. Bailey , 2010 ME 15, ¶¶ 22-24, 989 A.2d 716 ; State v. Faulkner , 586 A.2d 1246, 1247 (Me. 1991) ; State v. Fredette , 411 A.2d 65, 68 (Me. 1979) ; State v. McLain , 367 A.2d 213, 216-17 (Me. 1976) ; State v. Barlow , 320 A.2d 895, 899 (Me. 1974).
[¶ 51] Citing Barlow , among other sources of law, the Court acknowledges that consent cannot be voluntary if it is induced by misrepresentation. Court's Opinion ¶¶ 22, 32. The Barlow Court, citing to Supreme Court precedent, explained "that a search cannot be justified as reasonable and lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted an alleged authoritative right to search." Barlow , 320 A.2d at 900 (quoting Bumper v. North Carolina , 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) ). In Barlow , this Court specifically said that,
[w]here an officer ... conveys to the defendant by affirmative misrepresentations that he has the right to search without a warrant as in the instant case, the defendant's consent to the search given in response to such false assertions must be regarded as the mere submission of a law-abiding citizen to an officer of the law and cannot be construed as a valid waiver of [her] constitutional rights against an unreasonable search and seizure.
320 A.2d at 900.
[¶ 52] Here, Birchfield compels us to conclude that the implied consent warning stating that a defendant has a duty to submit to a chemical test to determine her alcohol level is a misrepresentation of the law. This is no different than the police officers in Barlow who told the defendant that they had the right to search without a warrant. See Barlow , 320 A.2d at 898-99. Both involved misrepresentations of the law intended to overcome a defendant's right to withhold consent to a search. In light of Birchfield , LeMeunier-Fitzgerald did not have a duty to take a blood test; she had an absolute right to refuse to consent to a blood test. See Birchfield , 569 U.S. at ----, 136 S.Ct. at 2186. Therefore, just as the threat of an enhanced criminal *200 penalty is coercive as a matter of law, a police officer's statement that a defendant has a "duty to submit to and complete chemical tests to determine ... alcohol level and drug concentration" is coercive as a matter of law.
B. Comment on Evidentiary Consequences of Refusal
[¶ 53] The second statement made to the defendant also constitutes a misrepresentation of the law. The police officer, again reading from Maine's implied consent form, stated to LeMeunier-Fitzgerald:
Your failure to submit to a chemical test is admissible against you at any trial for operating while under the influence of intoxicating liquor or drugs.
Because Birchfield gives a defendant the constitutional right to refuse to submit to a blood test, informing LeMeunier-Fitzgerald that if she refused, that refusal would be admissible against her at trial, was a misrepresentation of the law, and thus coercive.
[¶ 54] We recently held in State v. Glover that the State may not comment on a defendant's failure to give consent to a search. See 2014 ME 49, ¶¶ 16-17, 89 A.3d 1077. In Glover , the defendant exercised his constitutional right not to submit to a warrantless DNA test, and the State repeatedly referenced Glover's refusal to consent to the warrantless search. Id. ¶ 14. Relying on the principle that the "value of constitutional privileges is largely destroyed if persons can be penalized for relying on them," id. ¶ 13 (quotation marks omitted), we "conclude[d] that the manner in which Glover's exercise of a constitutional right was used to penalize him at trial [was] fundamentally unfair and contrary to the principles of justice that encourage the free exercise of constitutional rights," id. ¶ 16.
[¶ 55] After Glover, telling a defendant that the prosecution will use her refusal against her if she does not agree to the blood test is a significant misrepresentation of the law. Ultimately, it is not important what could happen at trial; it is the misrepresentation of the law at the time of the inducement of consent that is of import. When an officer misrepresents the law and allows the defendant to believe that any refusal to consent will be used against her at trial, the misrepresentation is inherently coercive.
[¶ 56] I would hold that it was coercive as a matter of law to tell LeMeunier-Fitzgerald the following three things: (1) that she would face an enhanced criminal penalty for refusal to submit to a blood test, (2) that she had a "duty to submit" to the blood test, and (3) that any evidence of her refusal would be admissible against her in a trial. The State's implied consent form should be modified to remove the language that misrepresents the law in light of Birchfield .